SAMUEL GOLDWYN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8770. Promulgated September 30, 1947.

*Ferdinand Tannenbaum, Esq., Z. N. Diamond, Esq.,* and *George Lewis, Esq.,* for the petitioner.

*William A. Schmitt, Esq.,* for the respondent.

514

**OPINION.**

JOHNSON, *Judge*: Petitioner, as sole shareholder of Studios, received in 1942 a dividend of $800,000. The parties are agreed that $104,-610.56 of this amount was earnings and profits if the dividend of $203,091, declared September 11, 1930, reduced Studios' accumulated earnings and profits in the fiscal year ended June 30, 1931, and that $239,059.58 thereof was earnings and profits if, as the Commissioner determined, the prior dividend reduced accumulated earnings, profits, and paid-in capital in the fiscal year ended June 30, 1933. Studios, be it noted, had more than ample earnings and profits in the fiscal year 1931 to pay the dividend in full, but subsequent losses had reduced this accumulation by June 1933. As a consequence the amount of earnings and profits available in 1942 for payment of the $800,000 dividend depends upon the amount absorbed by the prior dividend, and that in turn depends upon whether the prior dividend reduced earnings and profits in the fiscal year 1931 or in the fiscal year 1933.

Contending that distribution occurred in the fiscal year 1931, petitioner stresses that, pursuant to the declaration of September 11, 1930, the amount of the dividend was charged to surplus; apportioned among the several shareholders, and individually credited to them on the corporate books; that consistently Studios reported the amount on its income tax return for 1931 as "Dividends Payable," and even if the shareholders be deemed to have postponed distribution by their failure to withdraw, still the declaration vested them with a right to it which of itself reduced the corporate surplus. Respondent argues to the contrary, that the dividend was not distributed until 1933; that it was reported by shareholders as received in 1933; and that the time

of actual payment fixes the date on which the corporate earnings and profits are reduced, as was held in *Emily D. Proctor*, 11 B. T. A. 235, and cases therein cited.

It was recognized in the *Proctor* case that:

* * * as between a stockholder and a corporation, the declaration of a dividend brings into existence the status of a debtor and creditor, and the earnings and profits of the corporation to the extent of such a declaration are separated from the other property of the corporation. *United States* v. *Guinzburg, supra* [278 Fed. 363]; *Plant* v. *Walsh, supra* [280 Fed. 722]; and *Appeal of A. H. Stange, supra* [1 B. T. A. 810].

This rule has been applied in holdings that a corporation's invested capital is reduced by the amount of a dividend declared, *Gregg Co., Ltd.*, 25 B. T. A. 81; *Belmont Iron Works*, 9 B. T. A. 216; *W. E. Caldwell Co.*, 6 B. T. A. 47, even in the form of promissory notes, *R. E. Burdick*, 24 B. T. A. 1297, and that until payment the amount of a declared dividend is borrowed capital owed to the shareholders, *Bulger Block Coal Co.*, 71 Ct. Cls. 636; 48 Fed. (2d) 675. The law of California here applicable conforms to the general rule, and was succinctly stated in *Smith* v. *Taecker*, 133 Cal. App. 351; 24 Pac. (2d) 182, as follows:

* * * the mere declaration of a dividend creates debts against the corporation in favor of the stockholders as individuals. Where the resolution declares a dividend on a future date, title to said dividend vests in the stockholder on the date fixed in the resolution.

From this it follows that in the fiscal year 1931 Studios became legally bound to pay the declared dividend of $203,091 to its shareholders; that this amount could no longer be listed among its assets, but represented an indebtedness; and that surplus was thereby decreased. The evidence discloses that recognition was given by appropriate book entries to these consequences: The surplus account was debited with the amount and a corresponding credit was entered in a liability account styled dividends payable, on which the part of the total dividend due to each shareholder was individually indicated.

Respondent argues, none the less, that the date of payment or distribution to the shareholders fixes the year in which surplus was decreased, and, because there was no transfer of the amounts due the several shareholders from the dividends payable account to their respective individual accounts until the fiscal year 1933, he insists that the latter year is the year of distribution and, hence, the year in which surplus was reduced, under *Mason* v. *Routzahn*, 275 U. S. 175, and *United States* v. *Phillips* (C. C. A., 3d Cir.), 24 Fed. (2d) 195, as construed in the *Proctor* opinion, *supra*. In considering this argument we stress as of crucial significance that those cases involve the liability of the recipient shareholder for tax on a dividend and not the effect of the declaration or payment on the corporation's own financial

structure. We accept as settled that "the date of payment, not the date of the declaration of the dividend, is the date of distribution," *Mason* v. *Routzahn, supra*. But, assuming, *arguendo*, that the shareholders did not receive the dividend until the corporation's fiscal year 1933, we do not regard as applicable to the issue in this case the rule that a shareholder, whether on the cash or accrual basis, is not to be treated as receiving a dividend until his existing right to it has been satisfied by payment, actual or constructive. That rule is one of convenience rather than of strict law, as was pointed out by the Seventh Circuit Court of Appeals in *Commissioner* v. *American Light & Traction Co.*, 156 Fed. (2d) 398, holding a shareholder on an accrual basis taxable in 1937 on a dividend actually paid in 1937, although his absolute right to it had ripened in 1936 by virtue of the declaration. And, while the Board of Tax Appeals in the *Proctor* case, *supra*, treated a special dividend as paid from available surplus, although a regular dividend, previously declared but unpaid, would have absorbed such surplus, it expressly recognized that the declaration brought into existence the relation of debtor to the shareholders, as appears from the above quoted excerpt, and then reasoned:

> * * * we think it beside the point that the corporation may for a profit and loss statement or accounting purposes, or as showing the status existing between the corporation and its shareholders, show its earnings and profits to be reduced by a declaration of a dividend not then paid. The dividend declared must give way to the dividend paid *in so far as the taxability of the same in the hands of the stockholders is concerned.* It is to tax that which is first distributed by payment rather than declaration that the statute seeks to and does reach. [Italics supplied.]

In this proceeding, however, we are not concerned with the taxability of the dividend declared on September 11, 1930, in the hands of the stockholders, but only with the effect of that dividend on corporate surplus. In the fiscal year 1931 the amount of it was properly charged against surplus; this charge remained unreversed thereafter, and whatever may have been the correct year for taxing the dividend to the stockholders, we are of opinion and hold that the accumulated earnings and profits of Studios were reduced in the fiscal year 1931 by the declared dividend of $203,091.

In reaching the foregoing conclusion, we have assumed, *arguendo*, that the dividend declared on September 11, 1930, was not distributed until the fiscal year 1933, as respondent argues and petitioner denies. A close review of the facts established convinces us not only that surplus was reduced, but also that the shareholders received the dividend in the fiscal year 1931, and the decision reached is thus fortified. By the declaration, the dividend was payable on December 15, 1930; surplus was charged with the amount as of the date of the declaration, and each shareholder's part was credited individually in the dividends

payable account. Although the shareholders were indebted to Studios and the balances in their accounts varied frequently, there was no transfer to their individual accounts until June 27, 1933, when they directed the corporation by letter·to credit a part to the debts, and the remainder was then credited for the first time to their individual accounts. Respondent argues that only then a distribution was made whereby the corporate earnings and profits were reduced. He stresses that December 15, 1930, has no significance, "because absolutely nothing was done by anybody on that date," .not even a crediting of the dividend to the shareholders' individual accounts. It is equally true, however, that nothing was done from September 11, 1930, date of the declaration, until June 27, 1933, when the shareholders directed the disposition to be made of the dividends, and among such directions, which were immediately carried out, was an assignment of $28,000 of the dividend due Mary Pickford and Douglas Fairbanks for application to the debt of Feature Productions, Inc. Obviously, on June 27, 1933, the shareholders had an unqualified control over the dividends which the corporation recognized, and, if "nothing was done" after the entries made at the time of the declaration, we must assume that the shareholders had the same absolute control in the fiscal year 1931 that they had in the fiscal year 1933.

A dividend credited to a shareholder and unqualifiedly subject to his command is taxable to him as distributed in the year of the credit, whether or not actually withdrawn, *Baker* v. *United States*, 84 Ct. Cls. 428; 17 Fed. Supp. 976; *Jacobus* v. *United States*, 80 Ct. Cls. 357; 9 Fed. Supp. 41; *Hadley* v. *Commissioner* (App. D. C.), 36 Fed. (2d) 543; *Brooks* v. *Commissioner* (C. C. A., 4th Cir.), 35 Fed. (2d) 178; *E. Gordon Perry*, 28 B. T. A. 497; cf. *Avery* v. *Commissioner*, 292 U. S. 210, for a shareholder "cannot postpone his income taxes by leaving his dividend with his corporation," *A. D. Saenger, Inc.* v. *Commissioner* (C. C. A., 5th Cir.), 84 Fed. (2d) 23; certiorari denied, 299 U. S. 577. And, although the shareholders here erroneously reported the dividend on their income tax returns for 1933, such treatment by them is immaterial to the issue, *Valley Lumber Co. of Lodi*, 43 B. T. A. 423; the corporation, on the contrary, properly listed it as a liability in its return for the fiscal year 1931. Payments by credit have been held sufficient to support the corporation's claim for a dividends paid credit, *Valley Lumber Co. of Lodi, supra; Atlantic Land .Co.*, 43 B. T. A. 74; *Valley Tractor & Equipment Co.*, 42 B. T. A. 311.

\* \* \* The test in such cases is whether the right of the stockholder has so matured as to subject the dividend credited on the corporation's books to the complete control of the stockholder and remove it from the control of the corporation. Whenever that test is satisfied, the book credit is regarded as the equivalent of cash and constitutes payment of the dividend. \* \* \* [*R. H. Bouligny, Inc.*, 45 B. T. A. 456].

We are of opinion that the test has been satisfied by the crediting of the dividend to the shareholders on September 11, 1930, and, as it was payable on December 15, 1930, the shareholders had complete control from that date, as is apparent from their directed disposition of the dividend in 1933 without further corporate action. The distribution, therefore, was made in the fiscal year ended June 30, 1931, and *a fortiori*, the corporate surplus was then reduced.

In accordance with the stipulation, we find that $104,610.56 of the dividend of $800,000 received by petitioner in 1942 constituted a distribution of earnings and profits.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HILL, *J.*, dissents.

---

DISNEY, *J.*, dissenting: The majority view has two bases: First, it is held that the declaration of a dividend in 1930 and debit thereof to surplus on the corporation's journal created the relation of debtor and creditor between the corporation and the stockholders, and decreased the surplus; that, therefore, the stockholder, for purposes of the question here, may be considered as receiving the dividend though there has been no payment, either actual or constructive, that the cases requiring such payment, actual or constructive, apply only to questions of taxability of the dividend in the hands of the stockholders, and not here, where the question is as to effect of the dividend on corporate surplus, and that the dividend declared in 1930 reduced the accumulated earnings and profits. Second, it is held, in the alternative, that in fact there was constructive receipt of the dividend by the stockholders, the dividend declared having been entered on the corporation's "dividend payable" account on the corporate ledger, where each stockholder's proportionate part was credited in his name, although the amounts shown in journal and ledger as credits to the shareholders individually were not credited in their individual running accounts with the corporation. (Each shareholder had a running account, reflecting debit and credit entries and the amounts of shareholders' indebtedness to the corporation varied greatly, but the dividend was not reflected in such accounts.)

I think it clear beyond controversy that the alternative basis of decision is without foundation. Quoting *Valley Tractor & Equipment Co.*, 42 B. T. A. 311, the majority opinion recognizes that the test is complete control by the stockholder over the dividend, and removal of control from the corporation. It is obvious that the corporation had not lost, nor the stockholder acquired, control over the dividend. Credit to "dividends payable" on the corporate books transferred no more control to the stockholder than an entry of "bills

payable" or "notes payable" transfers control to the payee. The matter is solely that of intracorporation bookkeeping. Logically, a showing is required that the stockholder could get his money at any time without possibility of denial by the corporation. This is indicated by the cases relied on by the majority. In the *Valley Tractor* case checks were issued to the shareholders. In *Valley Lumber Co. of Lodi*, 43 B. T. A. 423, it was shown that the dividend was credited to the individual accounts of the shareholders and that on such accounts none of the stockholders was indebted to the corporation. In *Atlantic Land Co.*, 43 B. T. A. 74, the dividend was credited to the stockholders "without restrictions as to withdrawals," and the stockholders were informed by the president that the dividend was available to any shareholder who desired to receive it forthwith, and that the amounts would be credited to each without restrictions as to withdrawals. In *R. H. Bouligny, Inc.*, 45 B. T. A. 456, cited by the *Valley Tractor* case, the dividend was immediately credited to the personal accounts of the stockholders, "who thereupon had the unrestricted right to withdraw the same." The personal accounts had been maintained for a long time and the practice had been to credit thereto and for the stockholders to make withdrawals as they needed money or the financial condition of the corporation permitted. In my opinion, it is just such a showing that is necessary to establish constructive receipt of a dividend, and such showing is wholly absent here. The stockholders had no control whatever over the "dividends payable" account. The fact that their names appeared thereon is of no import. Insofar as the majority opinion relies on constructive receipt of dividend, I regard it altogether erroneous.

Primarily, however, the majority are of the view that the declaration of the dividend "vested them [the stockholders] with a right to it which of itself reduced the corporate surplus." I can subscribe to no such idea. Under section 115 (c) of the Internal Revenue Code, a dividend is a "distribution" out of earnings and profits; therefore, until the earnings and profits are *distributed*, they remain as such, available for future distribution. The term means "division or apportionment among several or many," and synonymous are: apportionment, allotment, dispensation, disposal, dispersion, classification, arrangement—Webster's New International Dictionary. To me the above does not permit us to consider a declaration of dividend, accompanied merely by bookkeeping entries reducing surplus, as a distribution of earnings and profits. In no real sense were they distributed. To so hold is to give mere bookkeeping entries weight which is nowhere else accorded to them. Real facts, not bookkeeping entries, control the determination of taxable income. *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179; *B. F. Goodrich Co.*, 1 T. C. 1098. We held in *F. J. Young Corporation*, 35 B. T. A. 860; affd., 103 Fed. (2d) 137, that book

entries transferring surplus to a no par stock account in order to increase the stated value did not diminish the corporate earnings or profits available for dividends, saying in part: "The book entries took nothing from the corporation and gave nothing to the stockholders." Surely the same is true here. In *Inland Development Co.* v. *Commissioner*, 120 Fed. (2d) 986, the directors of a corporation resolved that a dividend be declared and an entry was made on the corporate books charging the earned surplus account with $53,125 and crediting that amount to the account of the sole stockholder, which on its books credited dividends received. The court said, "The nomenclature of the Board of Directors did not determine the essence or nature of the action taken. Calling it a dividend did not make it so." It was held that the transaction was not a dividend, but a sale of oil. In *J. W. Thompson*, 10 B. T. A. 390, a charge was made to surplus to cover a purchase made by the sole stockholder of a corporation. It was held that, despite such charge and the designation as dividend in the return, there was no dividend. In *Pullman, Inc.*, 8 T. C. 292, we said that the fact that a corporation treated a distribution as from capital, rather than from earnings and profits, as to which no change was shown, was not controlling on the question as to whether there was the equivalent of a distribution of a taxable dividend.

That bookkeeping, and particularly entries as to surplus, etc., in connection with dividends and the present question, is not determinative, seems to me well and definitely settled in *Edwards* v. *Douglas*, 269 U. S. 204. Construing section 31 (b), added by section 1211 of the Revenue Act of 1917, as to corporate distributions from undivided profits or surplus, the Court said: "Congress did not use the words 'surplus account' or 'undivided profits account.' Its language is 'undivided profits or surplus.' * * *" Later, referring to Congress and its intent, the Court said:

* * * Its general aim was clearly to make the dividends, in whatever year paid, bear the tax rate of the year in which the profits of which it was a distribution had been earned, and for this purpose to treat as a unit the profits of the whole tax year. In providing measures for the attainment of that aim, it could be of no practical significance whether, at the time of the payment of the dividend, these profits appeared in a surplus or undivided profits account (as the profits earned within part of a year would, where a corporation closed its books monthly, quarterly, or semiannually) or whether they still rested as current earnings without formal determination or specific allocation.

I think, therefore, the debit to surplus on the corporate journal is greatly overweighed by the majority view.

That declaration of a dividend is not sufficient for purposes of dividends paid credit is not subject to question. There must be actual or constructive receipt by the stockholder. Why should the

rule be different when the question is whether earnings and profits have been distributed? One section, 27, says the dividend must be "paid"; the other, 115 (a), says there must be "distribution." A difference seems to be based, I think, not on fact or effect, but upon mere words. We have, moreover, not limited the requirement that there be more than declaration of dividend to "dividends paid credit" cases. In *Korfund Co.*, 1 T. C. 1180, the question was whether a stockholder was taxable in 1928, when it was resolved that the net surplus be distributed in proportion to stock (with an agreement among the stockholders that the surplus be not withdrawn for four years), or in 1938, when the money was received. We held that the income was taxable in 1938, that mere declaration of dividend does not give rise to taxable income, commenting, *inter alia*, that funds were not set aside, that (as here) surplus was not credited to the stockholders on their accounts, that the dividend was not subject to the unqualified demand of the stockholders, and that the corporation exercised control over the funds. Here, it is clear, either that, as in the *Korfund* case, the stockholders voluntarily permitted the surplus to remain with the corporation, or that they could not do otherwise, having no control. In either case, under the *Korfund* case they would not be taxable until paid. Why adopt a different rule for purposes of saying when the corporation distributed—to affect the taxability to the stockholder of distributed amounts? That, indeed, is the final question both here and in the *Korfund* case. Moreover, it is clear that here, as in the cited case, there was exercise of control by the corporation over the funds. Though on the journal there was debit to surplus, the corporation never went so far as to credit the amount to stockholders running drawing accounts, on which apparently there were constant entries, certainly debit and credit entries, and the amounts of stockholders' indebtedness to corporation "varied greatly from time to time." Thus, the corporation kept control as much as in *Korfund*. On the books for 1930 the amount was merely "payable," and on the income tax return for 1931 the amount was shown under "other liabilities" as "dividends payable." Such records effectually, in my view, nullify any possible effect from a debit to surplus, for they show that in fact there was no segregation of amounts of earnings involved, in the corporate fisc, let alone a "distribution * * * *out of*" earnings and profits— as section 115 (a) requires. That declaration of dividend effects a relation of debtor and creditor, between corporation and shareholder, can not meet the "distribution" and "out of" earnings test.

In *Hadley* v. *Commissioner*, 36 Fed. (2d) 543, we again note that mere declaration is not held sufficient—in a case not involving dividends paid credit; for there it was held that within section 201 (a)

of the Revenue Act of 1918 (the precursor of, and in the same language, so far as here pertinent, as section 115 (a)), a mere declaration of dividend, without setting aside funds for payment, can not constitute either dividend or distribution, and that, without a declaration, if corporate earnings are credited to the account and unqualified control of the stockholders, there was such distribution as caused taxation of the amounts as income. The case shows the overimportance which is ascribed to mere declaration or debit to surplus by the majority opinion here. The important element is distribution, and we see control by stockholder, through unqualified credit to his account, again recognized as the test of taxability. The same question is ours here; the test should be the same.

In *Lawrence* v. *Commissioner*, 143 Fed. (2d) 456, the court applied the test of absolute right of withdrawal of funds, on the same question and situation here presented, i. e., as to effect of declared dividend on diminishing corporate earnings and profits. The direct question was whether income from a dividend paid in 1937 was taxable or nontaxable because from paid-in surplus. This depended upon whether the amounts had in 1913–1917 been distributed as dividends and then paid back into paid-in surplus, or whether, instead, the funds had never left the corporation and were therefore paid from earned surplus, and, therefore, as dividends, in 1937. During these years, 1913–1917, the amount of the earnings was declared as dividend, but there was not actual payment. Though the amounts were placed to the credit of the various stockholders on the books of the corporation, from which withdrawals were made (the stockholders here had no such credits, no such control), the court considered from the evidence that the declarations were not regarded as "terminating the corporation's control over the money," and that the so-called dividends "were not unqualifiedly made subject to the demand of the shareholders so as to be income to them when placed to their credit on the books"; therefore the Circuit Court affirmed the Tax Court in holding that there had been no distribution in 1913–1917, so that there was taxable distribution from earnings in 1937. The point is that the court *made the test*, not declaration of dividend, but termination of corporation control over the funds by unqualified subjection to stockholders' demand, and not the test primarily adopted by the majority here—creation of relation of debtor and creditor by dividend declaration. There was such declaration and creation of creditor-debtor relation in the cited case. The conclusion there can not stand with the majority opinion here. Mark that the question, as here, was whether previous alleged distributions had sufficed to diminish earnings available for dividends. If the test of unqualified control by stockholder was there properly applied, we must see that here the stockholders with no credit

to their drawing accounts, and, just as in the cited case, not receiving the money, are in a weaker position in contending that there was distribution.

I have not considered it necessary to reiterate what has been said in *Emily D. Proctor*, 11 B. T. A. 235; *Mason* v. *Routzahn*, 275 U. S. 175, and *United States* v. *Phillips*, 24 Fed. (2d) 195, on the subject, which I regard as decisive of this question contrary to the majority view, for the reason that they hold that date of payment, not declaration of dividend, determines taxability, therefore, here our question is merely whether under the decided cases there was something amounting to *payment*. Under such cases there was not. I dissent.

BLACK, HARRON, and OPPER, *JJ.*, agree with this dissent.