## COMMISSIONER OF INTERNAL REVENUE v. GOLDWYN.

### No. 12037.

United States Court of Appeals
Ninth Circuit.

June 20, 1949.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Harry Marselli and Abbott Sellers, Sp. Assts. to the Atty. Gen., for petitioner.

Ferdinand Tannenbaum, Z. N. Diamond, Olvany, Eisner & Donnelly, New York City (Ferdinand Tannenbaum, Z. N. Diamond and George Slaff, New York City, on the brief), for respondent.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

In 1942 respondent received a distribution in the amount of $800,000 from Samuel Goldwyn Studios, Inc., a corporation in which respondent owned all the outstanding shares. The principal source of the distribution was a reduction surplus created by corporate resolution reducing the par value of the capital stock and the stated capital of the corporation. The Commissioner determined that the sum of $239,059.-58 of the distribution was from accumulated and current earnings and therefore constituted a taxable dividend. See § 115(a) and (b) and § 22(a) of the Internal Revenue Code, Title 26 U.S.C.A. We are asked to review a decision of the Tax Court sustaining respondent's contention that the sum of $104,610.56 only constituted a distribution from accumulated and current earnings.

The amount of corporate accumulated and current earnings available for distribution in 1942 is dependent upon the character of transactions that occurred many years prior thereto. Samuel Goldwyn Studios, originally organized as United Artists Studio Corporation, was organized to acquire and make available to its shareholders, who were producers of motion pictures, studio facilities to meet the needs of their operations. In 1930 there were five shareholders, exclusive of the holders of qualifying shares. It was the practice of these shareholders to lease from the Samuel Goldwyn Studios corporation office space, stage space, equipment, services and other facilities while working on their productions. Running accounts were maintained with the corporation, and each shareholder was regularly billed for charges he incurred.

At the end of its fiscal year ended June 30, 1930 the corporation had accumulated and current earnings totaling $286,399.42. By resolution of its board of directors made and entered on September 11, 1930, a cash dividend in the amount of $203,091 was declared payable December 15, 1930. Pursuant to the resolution an entry was made in the corporate books debiting surplus with the amount of the dividend and crediting each of the stockholders with his proportionate share thereof, under the title "Dividends Payable". During the fiscal years ended June 30, 1931, 1932, and 1933, the corporation sustained statutory net losses of $97,650.97, $28,475.54, and $101,-349.36, respectively. The declared dividend of 1930 was not paid, nor did the shareholders request payment until June 27, 1933, at which time they instructed the corporation by letter, to credit the amounts due them to their running accounts with the corporation. Appropriate entries were made dated May 27, 1933.

The relevancy of the above transactions to the question of respondent's income tax in 1942 is this: If corporate accumulated and current earnings were reduced by the declaration of the dividend in 1930, the 1942 distribution was made out of accumulated and current earnings in the year 1942 to the extent of $104,610.56. If, on the other hand, the application of the dividends to the shareholders' accounts in 1933 reduced corporate earnings and profits and paid in capital in the year 1933, by which time considerable losses had been suffered, subsequent corporate income raised the amount of earnings and profits above the capital level to the extent of $239,059.58 in 1942, as determined by the Commissioner.

The Commissioner's argument is based on § 115(a) of the Internal Revenue Code,[1]

[1] Section 115(a) in 1942 read as follows:

"Definition of Dividend.—The term 'dividend' when used in this chapter (except in section 203(a) (3) and section 207(c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated

defining dividends. He contends that under § 115(a) the dividend was not paid until 1933 and therefore, corporate earnings and profits were not reduced until that time, and relies on cases announcing the rule that time of payment, rather than time of declaration, governs the date of dividend. The purpose of the definition of dividends contained in § 115(a) is to provide an accurate method for their inclusion in gross income under § 22(a). Section 115(a) is primarily concerned with shareholder-taxpayers, the extent of whose liability may depend on whether the dividend is income on the date of declaration or the date of payment.

The cases cited by the Commissioner, which turn on the construction of § 115(a), involve the question of the income tax liability of recipients of dividends. The question in the instant case is not concerned with tax liability of the shareholders because of the dividend; rather, our problem concerns the amount of corporate surplus after the declaration of the dividend, or, more specifically, whether the corporation had in its surplus after the fiscal year ended June 30, 1931, the amount which it had declared as a dividend on September 11, 1930. Section 115(a) does not purport to afford us a basis for a solution because, as we have stated, we are not determining the tax liability of dividend distributees.

In prior cases the Tax Court has recognized that a dividend may be treated by the corporation to reflect its surplus in a manner independent from its effect on shareholders' income under §§ 115(a) and 22(a) of the code. In Proctor v. Commissioner, 11 B.T.A. 235, it was held that insofar as the tax liability of the shareholder is concerned the date of payment of the dividend is decisive, although for the purpose of showing the financial status of the declaring corporation its earnings may be reduced as of the date of declaration.

At the date of payment, 1933, the corporation had suffered large losses which occurred subsequent to June 30, 1930, the year surplus and current earnings were recorded at $286,399.42. In fact, in 1933, the amount to the credit of the surplus account was much too small to absorb the distribution. The Commissioner's argument, if given effect, would lead to the conclusion that the major share of the distribution came from the capital account. He determined that the distribution in 1933 reduced paid in capital by $134,449.02 and reduced available accumulated earnings and profits by $68,641.98. However, it is not suggested that the distribution was not intended to be a bona fide dividend taken solely from the profits of the corporation.

■ We think the problem presented is primarily one of accounting in the absence of the application of § 115. The question is simply whether it was proper to charge surplus and current earnings with the amount of the dividend in the fiscal year ended June 30, 1931, the year it was declared, in order to accurately reflect the financial status of the corporation. Thus stated it is apparent that what is sought is the financial structure of a corporate organization at a given time, an accurate presentation of which is the very purpose and function of accounting. We find support for this analysis in rulings of the Treasury Department. Regulations 111, § 29.115-3 states: "In determining the amount of earnings or profits * * * due consideration must be given to the facts, and, while mere bookkeeping entries increasing or decreasing surplus will not be conclusive, the amount of the earnings or profits in any case will be dependent upon the method of accounting properly employed in computing net income." Also see, I.T. 3758, C.B. 1945, p. 159. In Commissioner v. James, 2 Cir., 49 F.2d 707, 708, it is stated that: "In employing the phrase 'earnings and profits' in section 201,[2] we think Congress intended the use of the term in the ordinary accounting understanding, * * *".

The Commissioner cites many cases hold-

---

after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made."

[2] § 201 of the Revenue Act of 1918 corresponds to § 115 of the present code.

ing that book entries or accounting practices are not controlling in tax matters. We do not question the accuracy of those decisions. They involve issues as to whether certain transactions come within the import of various code sections. Of course, what an accountant or bookkeeper enters in the books in a given case does not govern the applicability of statutory provisions. Such entries, however, may have evidentiary value. To say that book entries control would permit tax statutes to be circumvented by skillful accountants. In the instant case no tax dodging scheme is involved. The substance of a transaction, rather than its book entries, determines its taxability. We are not here concerned with the taxability of the transactions between 1930 and 1933. The tax consequences of the 1930 declaration did not manifest themselves for 12 years, and were wholly unpredictable in 1930. As we have stated, application of § 115(a) is not involved here.[3] The determination of the amount of capital and surplus levels of the corporation in 1930 and 1933 depends solely on an accurate accounting of corporate assets and liabilities at those times.

With the issue thus defined its resolution becomes clear. It is well settled that the declaration of a dividend incurs a debtor-creditor relationship between the corporation and its shareholders. Commissioner v. Scatena, 9 Cir., 85 F.2d 729, 731; United States v. Guinzburg, 2 Cir., 278 F. 363. See also, Commissioner v. Miller Mill Co., 5 Cir., 102 F.2d 599, a case arising under the Internal Revenue Code. Accountants uniformly follow the logical consequence of the relationship thus created by immediately reducing surplus and current earnings and crediting accounts payable by the proper amount. See, W. A. Paton, Accountants' Handbook, 3rd Ed., pp. 1041, 1042. It would be an inaccurate reflection of the corporation's financial standing to list an amount as surplus which in fact was due and owing under a legally enforceable obligation. The Securities Exchange Commission follows the same rule in its uniform system of accounts.

Regulation S-X of S.E.C., Art. 5, Rule 5.02, Sub. 25, 3 CCH Fed.Sec.Law Service, paragraphs 69242 and 70311. To similar effect see Gregg Co., 25 B.T.A. 81; Belmont Iron Works, 9 B.T.A. 216; W.E. Caldwell Co., 6 B.T.A. 47; Bulger Black Coal Co. v. United States, 48 F.2d 675, 71 Ct.Cl. 636. The corporation correctly reflected its accumulated and current earnings as reduced by the amount of the dividend in 1930.

An alternative contention, urged by respondent and sustained by the Tax Court, is to the effect that shareholders constructively received the dividend in 1930 and that corporate surplus and earnings were thereby reduced in that year. Because of the conclusion we have reached as to the effect of the declaration of the dividends in 1930 we think it unnecessary to discuss this alternative contention.

Affirmed.

---

[3] But see §§ 115 (l) and (m), where under situations there described earnings and profits to the extent specified would be determined by applying those sections of the code.