MABEL C. ROE, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 16358, 16359, 16360, 16361, 16362, 16442, 16443, 16489.

Promulgated October 16, 1950.

*John W. Donahoo, Esq.,* and *William T. Rogers, Esq.,* for the petitioners.

*Newman A. Townsend, Jr., Esq.,* for the respondent.

---

[1] John L. Roe, Sr., Barbara C. Sterling, Edward C. Roe, John L. Roe, Jr., Arthur G. Cummer Estate, Robert H. Paul, Jr., and Barbara C. Paul, and W. W. Cummer.

OPINION.

Kern, *Judge:* These proceedings were brought for a redetermination of deficiencies in income taxes, as follows:

| Petitioner | Docket Nos. | Year | Amount of def. |
|---|---|---|---|
| Mabel C. Roe | 16358 | 1941<br>1943 | $14,121.89<br>3,073.10 |
| John L. Roe, Sr | 16359 | 1943<br>1945 | 978.87<br>521.43 |
| Barbara C. Sterling | 16360 | 1941 | 4,781.02 |
| Edward C. Roe | 16361 | 1941<br>1944 | 3,906.11<br>357.42 |
| John L. Roe, Jr | 16362 | 1941 | 2,474.57 |
| Arthur G. Cummer Estate | 16442 | 1941 | 29,402.95 |
| Robert H. Paul, Jr. and Barbara C. Paul | 16443 | 1941<br>1943 | 3,067.16<br>1,588.15 |
| W. W. Cummer | 16489 | 1941<br>1943 | 2,965.76<br>1,778.93 |

The only questions remaining for decision relate (1) to the taxability, by reason of section 115 (a), (b), and (1) of the Internal Revenue Code, of certain distributions received by all of the petitioners, except John L. Roe, Sr., from the Cummer Trust, and (2) to the taxability of dividends paid in 1943 and 1945 to some of the petitioners which dividends had been declared in 1926 by the Cummer Lime Co.

Substantially all of the facts are stipulated and, as stipulated, are hereby found. Those facts hereinafter appearing which are not from the stipulation are from the evidence adduced at the hearing.

The distribution first in question was to petitioners from the Cummer Trust which had first received the money from its wholly-owned corporation, the Cummer Sons Cypress Co. The issue sharpens to the question of whether the Cummer Sons Cypress Co. had earnings and profits available for the payment of dividends which would support the distributions in question and require a holding in favor of the respondent. It appears to be conceded that Cummer Sons Cypress Co. did have such earnings and profits if the amounts which it received in 1940 and 1941 from Cummer Co., whose stock was wholly-owned by it, went to increase its earnings and profits.

Prior to March 1, 1913, the Cummer Co. acquired Florida timberlands at a cost of $380,460.28, and on March 1, 1913, this property had a value of $1,656,299. Subsequent to March 1, 1913, a portion of this $1,275,838.72 ($1,656,299 − $380,460.28) pre-1913 appreciation in value was realized through the sale of land and timber, and from time to time Cummer Co. made distributions of this realized appreciation to its sole stockholder, the Cummer Sons Cypress Co. There was a distribution of $181,944.03 from this source in 1940, which, together with

distributions made in 1934, 1937, and 1939, totaled $816,334.81, an amount which was in excess of the basis which Cummer Sons Cypress Co. had for Cummer Co. stock.

Cummer Co. made another distribution to Cummer Sons Cypress Co. in 1941 in the amount of $47,497.82. It was out of realized appreciation accrued prior to March 1, 1913. This sum of $47,497.82, and $63,407.71 from the 1940 distribution, which, as above indicated, had been held to be nontaxable income, were entered upon Cummer Sons Cypress Co. books in an account denominated "Tax-Free Surplus".

Cummer Sons Cypress Co. actively engaged in the manufacture of lumber and crates, and for 1940 and 1941 had annual sales in excess of $1,200,000. In addition to its "Tax-Free Surplus" account, Cummer Sons Cypress Co. also had an "Earned Surplus" account which, on December 31, 1940, reflected a zero balance, and on December 31, 1941, a deficit of $10,517.48.

As indicated, the Cummer Trust owned all of the capital stock of Cummer Sons Cypress Co., and petitioners, except John L. Roe, Sr., were beneficiaries. In 1941 Cummer Sons Cypress Co. distributed $172,827.74 to the Trust, and the Trust distributed $198,000 to petitioners. The Trust did not report the $172,827.74 as income on its 1941 return, which disclosed a net loss of $1,104.39 from other activities. Petitioners treated their 1941 distributions from the Trust as non-taxable income.

This Court has heretofore held in Cummer Sons Cypress Co., Docket No. 110641, Memorandum Opinion, March 14, 1946, that:

"That part of the 1940 distributions, $133,604.43 [from Cummer Company to Cummer Sons Cypress Co.] paid from increase in value of property accrued prior to March 1, 1913, and realized thereafter, is non-taxable. *Ernest E. Blauvelt, et al.*, *supra.* The remainder, $48,339.60, paid out of capital, is taxable."

Respondent has detailed the questions now before us, as follows: "There is thus presented for the Court's consideration the question whether a distribution by Corporation A [Cummer Co.] to its sole stockholder, Corporation B [Cummer Sons Cypress Co.] out of realized pre-1913 appreciation and which exceeds Corporation B's basis in Corporation A's stock, retains its non-taxable status when redistributed by Corporation B to its stockholders [the Trust] or whether Corporation A's distribution when received by Corporation B becomes a part of the earnings and profits of the receiving corporation available for the distribution of taxable dividends".

The statutory provisions under which we held in our above cited memorandum opinion, on the authority of *Ernest E. Blauvelt*, 4 T. C. 10, that Cummer Sons Cypress Co. had received its distribution as nontaxable were Internal Revenue Code Section 115 (a) and (b), which provide:

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this chapter * . * * means any distribution made by a corporation to its shareholders,, whether in money or in other property, (1) out of its earnings or profits accumu-. lated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *

(b) SOURCE OF DISTRIBUTIONS.—For the purpose of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113. * * *

Distributions out of appreciation on assets accrued prior to March 1, 1913, under section 115 (b), were held by us in Docket No. 110641 to be non-taxable to the corporation's stockholders notwithstanding the fact that the distributions exceeded the stockholders' basis in the corporation's stock.

In the *Blauvelt* case, *supra*, the taxpayer held shares of a corporation which had an accumulation represented by an increase in value of property held prior to 1913, which was thereafter realized within the meaning of section 115 (b). The excess of distributions over the adjusted basis of the stock was held to have been improperly reported as capital gain from the exchange of an asset. No part of such excess was properly includible in taxpayer's gross income. The Commissioner's deficiencies determined that the amount by which all of the distributions received exceeded their adjusted basis for the stock was includible in income under section 22 (a) and Regulations 103, section 19.111–1. This Court concluded that the statute provided the exemption, and that nothing from the legislative history would support respondent's position, (section 22 (a) being nullified in this respect by section 22 (e)) and Regulations 103, section 19.111–1, were held invalid. The statutory reference to the application of the tax-free distribution to the reduction of the adjusted basis of the stock was deemed to relate to the problem attendant upon the subsequent disposition of the stock.

Respondent argues that the principle of *Blauvelt* and *Cummer Sons Cypress Co.* is not controlling here because Cummer Sons Cypress Co. owned the stock in Cummer Co., and the only distributions which are non-taxable under *Blauvelt* case were those received by Cummer Sons Cypress Co., and the question now is whether such distributions are further exempt under Internal Revenue Code Section 115 (1) when redistributed by Cummer Sons Cypress Co. to the Trust.

Petitioners urged that the distributions do not lose their identity as exempt assets and that by reason of section 115 (1) retain a status which renders them non-taxable upon this second distribution. That section provides:

(1) EFFECT ON EARNINGS AND PROFITS OF GAIN OR LOSS AND OF RECEIPT OF TAX-FREE DISTRIBUTIONS.— * * *
* * * Where a corporation receives (after February 28, 1913) a distribution from a second corporation which (under the law applicable to the year in which the distribution was made) was not a taxable dividend to the shareholders of the second corporation, the amount of such distribution shall not increase the earnings and profits of the first corporation in the following cases:

(1) No such increase shall be made in respect of the part of such distribution which (under such law) is directly applied in reduction of the basis of the stock in respect of which the distribution was made.

(2) No such increase shall be made if (under such law) the distribution causes the basis of the stock in respect of which the distribution was made to be allocated between such stock and the property received.

Respondent also relies upon this statute and contends that under it "distributions out of realized pre-1913 appreciation *do increase* the earnings and profits of the receiving corporation *to the extent* that such distributions exceed the receiving corporation's basis in the distributing corporation's stock."

Unless the statute provides to the contrary, such a distribution would appear to be taxable. See *Lynch* v. *Hornby*, 247 U. S. 339. It is petitioners' contention that the income in controversy is exempt by the above-quoted provisions of section 115 (1).

We are not able to accept this view, however, and believe, as respondent urges, that by section 115 (1) the earnings and profits of Cummer Sons Cypress Co. are to be increased, because the distribution it received, under the law applicable to the year in which the distribution was made, was not "directly applied in reduction of the basis of the stock in respect of which the distribution was made," such distribution being admittedly in excess of its basis in the distributing corporation's stock. Thus, Cummer Sons Cypress Co. had available earnings and profits and the distributions by it to the Trust are taxable dividends.

Nor are we able to conclude, as petitioner contends. that the section of the statute here involved, specifically treating as it does with the "Effect on Earnings and Profits of * * * Receipt of Tax Free Distributions," permits of an application of the rationale of the *Blauvelt* case, which was concerned with different statutory provisions.

The stipulated facts relating to the second issue, which is only pertinent to certain of the petitioners, disclose the following:

The J. Cummer & Son Lumber Co., a Michigan corporation incorporated in 1890, transferred its assets and liabilities in 1926 to the Cummer Lumber Co., a Florida corporation organized for that purpose. In 1938, the Florida corporation changed its name to Cummer Lime

& Manufacturing Co. For convenience, it and its predecessors will sometimes hereinafter be referred to as Cummer Lime.

On December 31, 1925, the books of Cummer Lime showed credit balances in surplus accounts as follows:

| | |
|---|---:|
| Surplus earned subsequent to 3–1–13 | $20, 149. 82 |
| Surplus earned prior to 3–1–13 | 369, 072. 29 |
| Surplus from realized appreciation accrued prior to 3–1–13 | 1, 415, 239. 59 |
| | $1, 804, 461. 70 |

On February 9, 1926, the board of directors of Cummer Lime adopted the following resolution:

Resolved: To appropriate from earned surplus and realized appreciation the sum of $1,800,000 and distribute the same in cash to the stockholders of record at this date.

Resolved Further: To credit on the books of the Company the pro rata share to each stockholder of the amount herein ordered distributed and to instruct the treasurer to pay said amounts so credited from time to time, as cash is available, each payment to be prorated in accordance to the amount of the respective credit of each stockholder to the total sum of the respective payment.

At or about the time of the adoption of this resolution, the respective surplus accounts were charged with the total amount of $1,800,000, and the individual accounts of the stockholders were credited with their pro rata shares thereof. At all times since, these accounts, or the credit balances therein, have appeared on the books of the Company as "accounts payable" to the stockholders.

Thereafter, from time to time, Cummer Lime made payments to the stockholders on these "accounts payable" and has at all times and for all purposes looked upon and treated them as "accounts payable."

On the death of one of the stockholders in 1936 the credit balance of $83,183.47 in his dividend account on Cummer Lime Co. books was reported for estate tax purposes to have a fair market value of $50,000. Respondent increased this to $72,468.82 and the executors accepted this adjustment. The executors distributed equal shares of the balance in this dividend account to the heir-at-law.

On the death of another stockholder in 1943, the credit balance of $83,183.47 in his dividend account on Cummer Lime Co. books was reported and accepted as an estate having a fair market value equal to the balance.

In 1943, 1944, and 1945, payments were made on account of the "1926 dividend" as follows:

| Year: | Amount distributed |
|---|---:|
| 1943 | $40, 000 |
| 1944 | 20, 000 |
| 1945 | 20, 000 |
| Total | $80, 000 |

The unpaid balance of the 1926 dividend as of December 31, 1945, was $220,000.

Cummer Lime realized net income and/or net losses as follows:

| Year | Net income | Net loss |
|------|-----------|----------|
| 1943 | $93,467.74 | |
| 1944 | | $41,937.67 |
| 1945 | 64,602.84 | |

During 1943 and 1945 petitioners in the relevant dockets received distributions as follows on account of the 1926 dividend:

| Docket | Petitioner | Amount received 1943 | Amount received 1945 |
|--------|-----------|----------------------|----------------------|
| 16358 | Mabel C. Roe | $8,119.20 | $4,059.60 |
| 16489 | W. W. Cummer | 3,360.80 | 1,680.40 |
| 16359 | J. L. Roe, Sr. | 1,956.00 | 978.00 |
| 16443 | Robert H. and Barbara C. Paul | 3,360.80 | 1,680.40 |

The amounts so received were not reported by petitioners on their income tax returns for the years in question.

It is apparent that during the years 1943 and 1945, which are the years pertinent to this issue, Cummer Lime had more than adequate income to cover the distributions which respondent seeks to tax as dividends. The net income for 1943 and 1945 was $93,467.74 and $64,602.84, respectively; the distributions for these years were $40,000 and $20,000, respectively.

Since the distribution to the shareholders of Cummer Lime are thus supported by earnings of that company in the year of distribution, respondent's position that they constitute taxable dividends under Internal Revenue Code section 115 (b) [2] on its face is well taken.

Petitioners, however, are of the view that the 1926 declaration of a dividend, which by 1943 and 1945, was still unpaid, was in such unequivocal terms [3] as to create a debtor-creditor relationship, which the 1943 and 1945 distributions satisfied.

This position gains seeming support from *Samuel Goldwyn*, 9 T. C. 510, affd., (CA-9) 175 Fed. (2d) 641. But the meticulous care with which the Court incised the question there presented of the corporate position upon a prior declaration of dividends from the question of whether corporate distributions to stockholders constituted dividends serves to eliminate that case as compelling authority for our present question, which is clearly the stockholder-dividend issue. Moreover, the *Goldwyn* case found it necessary to conclude that there had been a constructive receipt of the dividend declared at the earlier period,

[2] *Supra*, page 5.
[3] Although payable only "as cash is available."

while in the case at bar there is no comparable showing, and we do not understand petitioners to so contend.

*Emily D. Proctor*, 11 B. T. A. 235, and its supporting cases, so carefully distinguished in *Samuel Goldwyn, supra*, dealt with our stockholder-dividend issue, even prior to the section 115 provision above set forth, and declared:

* * * we think it beside the point that the corporation may for a profit and loss statement or accounting purposes, or as showing the status existing between the corporation and its shareholders, show its earnings and profits to be reduced by a declaration of a dividend not then paid. The dividend declared must give way to the dividend paid *in so far as the taxability of the same in the hands of the stockholders is concerned.* It is to tax that which is first distributed by payment rather than declaration that the statute seeks to and does reach. [Emphasis added.]

Upon the explicit provisions of the statute and upon the rationale of *Emily D. Proctor, supra,* we must conclude that respondent did not err.

Such a conclusion presents the further contention of petitioners that the inclusion of the unpaid dividend accounts in the gross estates of two of the stockholders of Cummer Lime who died prior to the distributions in 1943 and 1945, precludes the payments from being income. It is urged that until the basis at which they were taxed for estate tax purposes is recovered, the payments are a return of capital. Whatever merit there might be to this position, Congress has deemed it wise to adjust for such possibilities of double taxation by providing under section 126 of the Internal Revenue Code for the inclusion of the income item in the income of the recipient and giving a deduction for the proportionate part of the estate tax attributable to the inclusion of the item in the estate tax return.

The deficiency for the petitioners in this situation will be adjusted accordingly.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*