ROE et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 13679.

United States Court of Appeals Fifth Circuit.

Nov. 23, 1951.

William T. Rogers, Jacksonville, Fla., for petitioners.

Hilbert P. Zarky, Ellis N. Slack, Special Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, W. Herman Schwatka, Spl. Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES, and STRUM, Circuit Judges.

JOSEPH C. HUTCHESON, Chief Judge.

Decided in the Tax Court[1] adversely to petitioners, and consolidated for briefing, hearing, argument, and decision here upon one transcript of record, these petitions for review present two questions for our decision.

This is the first question: "Do the distributions from the Cummer Company to its parent corporation, Cummer Sons Cypress Company, from realized pre-1913 appreciation in value of its timberlands constitute 'earnings and profits' of the latter Company?"

The petitioners contend that they do not, even though in excess of the cost basis of the Cummer Company stock, and that distributions by the Cypress Company of this pre-1913 appreciation, after all earnings and profits accrued prior and subsequent to March 1, 1913, have been distributed, are tax-free. The respondent, on the other hand, contends that such distributions do become a part of the earnings and profits of the recipient corporation, because the same are in excess of the cost basis of such stock.

The facts were fully stipulated. Those controlling on the first question are set out below.[2]

This is the second question: Were payments to its stockholders made in 1943 to 1945 by Cummer Lime Co., pursuant to a resolution adopted in 1926 by its predeces-

---

1. 15 T.C. 503.
2. These are the controlling facts on this issue:

A corporation owned Florida timberlands which it acquired prior to March 1, 1913, and which on March 1, 1913, had a considerable appreciation in value.

A second corporation owned all of the stock of the first corporation. A trust owned all of the stock of the second corporation, and the petitioners in this proceeding, with the exception of one, are beneficiaries of that trust.

Subsequent to March 1, 1913, the appreciation in value of the first corporation was realized and distributed to the second corporation, and in a proceeding in the Tax Court in 1946 it was determined that that distribution was nontaxable. This same distribution there held tax free has now been distributed by the second corporation through the trust to the petitioners, and it is taxpayers' contention that it retains its non-taxable identity.

The facts in a little more detail and as they have been stipulated are briefly these:

The Cummer Sons Cypress Company was incorporated under the laws of Florida in 1910. The Cummer Company was incorporated under the laws of Florida in 1903. The principal place of business of both corporations is in Jacksonville, Florida. Throughout the year 1941, which is the only year in which this first issue is involved, all of the outstanding capital stock of the Cummer Company was owned by the Cummer Sons Cypress Company.

The Cummer Trust is a voluntary trust created on July 19, 1928, and throughout 1941 it owned all of the outstanding stock of the Cummer Sons Cypress Company. During the year 1941, the Petitioner in each of the cases here consolidated with the exception, however, of John L. Roe, Sr., were beneficiaries of this trust.

On March 1, 1913, the Cummer Company was the owner of large tracts of timberland in the State of Florida. In 1924 the company and the timber Section of the Bureau of Internal Revenue determined and agreed that the March 1, 1913 value of this timber and the timberland was greatly in excess of the cost.

Subsequent to March 1, 1913, a portion of the pre-1913 appreciation in value was realized through the sale of the land and timber, and from time to time the Cummer Company made distributions of such realized appreciation to its sole stockholder, the Cummer Sons Cypress Company.

All such distributions received by Cummer Sons Cypress Company were credited to a special account on its books which is termed "Tax-free surplus".

On March 14, 1946, in an action entitled "Cummer Sons Cypress Co. v. Commissioner", this Court rendered a decision determining that the distributions from the Cummer Company to the Cummer Sons Cypress Company were tax-free, even though they exhausted the cost basis of the stock.

In 1941 the Cummer Sons Cypress Company made distributions out of that tax-free surplus. After all earnings and profits accumulated prior to and subsequent to March 1, 1913 had been distributed to its sole stockholder, the Cummer Trust, which in turn distributed the same to its beneficiaries.

sor company, taxable to them, as dividends received in those years, as the commissioner contended and the tax court held, or were they, as the taxpayers contend, merely pay-ments made on debts due them since 1926, when a dividend was declared and according to the taxpayers actually or constructively paid in that year? [3]

3. These are the controlling facts on this issue:

The J. Cummer & Son Lumber Co., a Michigan corporation incorporated in 1890, transferred its assets and liabilities in 1926 to the Cummer Lumber Co., a Florida corporation organized for that purpose. In 1938, the Florida corporation changed its name to Cummer Lime & Manufacturing Co. For convenience, it and its predecessors will sometimes hereinafter be referred to as Cummer Lime.

On Dec. 31, 1925, the books of Cummer Lime showed credit balances in surplus accounts as follows:

| | |
|---|---|
| Surplus earned subsequent to 3-1-13 | $ 20,149.82 |
| Surplus earned prior to 3-1-13 | 369,072.29 |
| Surplus from realized appreciation accrued prior to 3-1-13 | 1,415,239.59 |
| | $1,804,461.70 |

On Feb. 9, 1926, the board of directors of Cummer Lime adopted the following resolution:

Resolved: To appropriate from earned surplus and realized appreciation the sum of $1,800,000 and distribute the same in cash to the stockholders of record at this date.

Resolved Further: To credit on the books of the company the pro rata share to each stockholder of the amount herein ordered distributed and to instruct the treasurer to pay said amounts so credited from time to time, as cash is available, each payment to be pro rated in accordance to the amount of the respective credit of each stockholder to the total sum of the respective payment.

At or about the time of the adoption of this resolution, the respective surplus accounts were charged with the total amount of $1,800,000, and the individual accounts of the stockholders were credited with their pro rata shares thereof. At all times since, these accounts, or the credit balances therein, have appeared on the books of the company as "ac-counts payable" to the stockholders.

Thereafter, from time to time, Cummer Lime made payments to the stockholders on these "accounts payable", and have at all times and for all purposes looked upon and treated them as "Accounts payable".

On the death of one of the stockholders in 1936 the credit balance of $83,-183.47 in his dividend account on Cummer Lime Co. books was reported for estate tax purposes to have a fair market value of $50,000. Respondent increased this to $72,468.82 and the executors accepted this adjustment. The executors distributed equal shares of the balance in this dividend account to the heir-at-law.

On the death of another stockholder in 1943, the credit balance of $83,183.47 in his dividend account on Cummer Lime Co. books was reported and accepted as an estate having a fair market value equal to the balance.

In 1943, 1944, and 1945, payments were made on account of the "1926 dividend" as follows:

| Year | Amount Distributed |
|---|---|
| 1943 | $40,000 |
| 1944 | 20,000 |
| 1945 | 20,000 |
| Total | $80,000 |

The unpaid balance of the 1926 dividend as of December 31, 1945, was $220,000.

Cummer Lime realized net income and/or net losses as follows:

| Year | Net Income | Net Loss |
|---|---|---|
| 1943 | $93,467.74 | |
| 1944 | | $41,937.67 |
| 1945 | 64,602.84 | |

During 1943 and 1945 petitioners in the relevant dockets received distributions as follows on account of the 1926 dividend:

| Docket | Petitioner | Amt. Recd. 1943 | Amt. Recd. 1945 |
|---|---|---|---|
| 16358 | Mabel C. Roe | $8,119.20 | $4,059.60 |
| 16489 | W. W. Cummer | 3,360.80 | 1,680.40 |
| 16359 | J. L. Roe, Sr. | 1,956.00 | 978.00 |
| 16443 | Robert H. and Barbara C. Paul | 3,360.80 | 1,680.40 |

Because, in its reported opinion, answering the questions in accordance with the commissioner's determination, the tax court has set out the stipulated facts, it will not be necessary for us, other than, as shown in the notes, *supra,* to state them. Neither will it be necessary to extend this opinion by setting out here in detail, as the tax court does in its opinion, the contentions and arguments of the parties. We shall content ourselves with merely stating wherein and why we agree with, or differ from the tax court in its conclusions.

■ Upon the first question we find ourselves in agreement with the answer given by the tax court and with the reasons assigned therefor. It is quite plain, we think, that in order to escape liability for the payment of taxes on the distributions in question, taxpayers must point to some statutory provision rendering the distribution nontaxable.[4] Indeed, we do not understand them to contend otherwise. Quite to the contrary, they point to Sec. 115(*l*) 26 U.S.C.A.[5] as according the necessary exemption, and to Sec. 115(b)[6] as contrasted with Sec. 115(d),[7] as showing that this is so. If we could agree with this construction of these statutes, we should, of course, agree that petitioner did not receive taxable distributions.

■ We cannot, however, agree for we think it plain, as pointed out by the tax court and by the commissioner in his brief, that while section 115(*l*) is of force to protect the distributions in the hands of the receiving corporation, it is not effective to extend this exemption *to distributions made by it to its stockholders to the extent that these distributions are in excess of the distributing corporation's cost basis.*

It is quite plain that here lies the crux of the difference between taxpayers and the tax court. It is equally plain, we think, that the tax court was right, the taxpayers wrong in respect of this contention.

The amounts so received were not reported by petitioners on their income tax returns for the years in question because of their claim that they were payments on account of debt.

4. Cf. Lynch v. Hornby, 247 U.S. 339, 38 S.Ct. 543, 62 L.Ed. 1149; Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, at page 49, 69 S.Ct. 358, 93 L. Ed. 477.

5. Petitioners urge that the distributions do not lose their identity as exempt assets and that by reason of section 115 (*l*) retain a status which renders them non-taxable upon this second distribution. That section provides:

"(*l*) Effect on earnings and profits of gain or loss and of receipt of tax-free distributions. * * *

* * * Where a corporation receives (after February 28, 1913) a distribution from a second corporation which (under the law applicable to the year in which the distribution was made) was not a taxable dividend to the shareholders of the second corporation, the amount of such distribution shall not increase the earnings and profits of the first corporation in the following cases:

"(1) No such increase shall be made in respect of the part of such distribution which (under such law) is directly applied in reduction of the basis of the stock in respect of which the distribution was made.

"(2) No such increase shall be made if (under such law) the distribution causes the basis of the stock in respect of which the distribution was made to be allocated between such stock and the property received."

6. They say the solution to the taxpayers' second problem—whether the law requires such distribution to be applied in reduction of the basis of the stock—is found in Internal Revenue Code Sec. 115 (b) which, in so far as applicable, is as follows:

"(b) Source of distributions. * * * Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distributions shall be applied against and reduce the adjusted basis of the stock provided in section 113. * * *

7. "(d) Other distributions from capital. If any distribution made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable * * *."

Upon the second point, while we recognize that it is not without difficulty, we agree with the taxpayers that the 1943 and 1945 payments were not dividend distributions paid out of the earnings of those years, but, as had been the case with payments made on that account in other years, debts paid "as cash is available", as directed in the 1926 resolution.[8]

The Tax Court, pointing out that during the years 1943 and 1945, the years pertinent to this issue, Cummer Lime had more than adequate income to cover the payments, concluded: " * * * respondent's position that they constituted taxable dividends under I.R.C. Sec. 115(b) on its face is well taken."

Of taxpayers' position that the 1926 declaration of a dividend, which by 1943 and 1945 was still in part unpaid, was in such unequivocal terms as to create a debtor-creditor relationship which the 1943 and 1945 payments satisfied, the Tax Court stated: "This position gains seeming support from Samuel Goldwyn, 9 T.C. 510, affirmed [9 Cir.,] 175 F.2d 641."

Going on, however, to declare that the support was only seeming because that case was distinguishable, it concluded: "Moreover, the Goldwyn case found it necessary to conclude that there had been a constructive receipt of the dividend declared at the earlier period, while in the case at bar there is no comparable showing, and we do not understand petitioner to so contend."

█ In so stating, we think the Tax Court erred. It is of the essence of the taxpayers' claim, as stated by them, that a debtor-creditor relationship was created and that there had been constructive receipt at the earlier period. The evidence, in our opinion, supports that claim.

The commissioner, stating that whether the corporation was indebted to its stockholders in 1926 is not at all material, the only important consideration is whether the income was unqualifiedly subject to their demand in that year, argues that the evidence affords no basis for the claim of taxpayers that it was, none for their claim that the matter was essentially the same as though the corporation had paid the dividend with the stockholders lending the amount thereof back to the corporation.

The commissioner, also relying strongly on Sec. 115(a), "Definition of dividend"; (b) "Source of distributions", insists that the provision in Sec. (b): "For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits." settles the issue against taxpayers.

█ This latter position begs the whole question. What the commissioner calls a distribution under Secs. 115(a) and (b), the taxpayers call a payment on a debt. If the commissioner is right in his assumption that these payments were a distribution within the meaning of this section, he would certainly be right in his conclusion that they were taxable. The taxpayers, however, take strong and vigorous issue with this assumption, and we agree with the taxpayers.

If the matter were of first impression with us, we could not agree with the views of the commissioner and the Tax Court. But it is not such a matter. This court has been for too long, by its decisions in other and similar situations, committed to the common sense view put forward by taxpayers to depart from it for reasons as little convincing as those the opinion of the Tax Court and brief of the commissioner offer.

8. This resolved to appropriate from earned surplus and realized appreciation the sum of $1,800,000 and distribute the same in cash to the stockholders of record at this date; and further resolved to credit on the books of the company to each stockholder his pro rata share thereof, and to instruct the treasurer to pay said amount so credited from time to time as cash is available.

The record shows that these credits were made and at all times since have appeared on the books of the company as "accounts payable" to the stockholders, and that thereafter from time to time Cummer Lime made payments to the stockholders on these accounts payable and has at all times and for all purposes looked upon and treated them as accounts payable.

Among the decisions[9] which the taxpayers marshalled in support of their view: that, by the declaration of the dividends, the earnings of the company to the extent declared were separated from the property of the corporation and were appropriated by that action to the then stockholders who became creditors of the corporation to the amount of the dividend and the relation then created was that of debtor and creditor; are many from this court.

In A. D. Saenger, Inc., v. Commissioner of Internal Revenue, 5 Cir., 84 F.2d 23, 25, we held that there was constructive receipt of a dividend by reason of the dividend declaration and credit to the stockholders' accounts, even though the corporation did not carry cash on hand sufficient to pay the same. "It could on demand", says the court, "have borrowed it or raised it by sale of some of its investments".

In Commissioner of Internal Revenue v. T. R. Miller Mill Co., 5 Cir., 102 F.2d 599, a corporation voted that $500,000 of the company's surplus be distributed to its stockholders in amounts proportionate to their stock in the company. At the same meeting the president and secretary were authorized to borrow from the stockholders the amount so distributed to them, and the corporation executed a note to trustees for the stockholders in that amount. The corporation made annual payments of interest on the notes and took a deduction for them. This deduction was allowed by the commissioner for the years prior to 1932 but was disallowed by him for the years 1932 and 1933, on the ground that the payments were not interest but dividends.

The Board of Tax Appeals reversed the commissioner, and this court affirmed, saying: "The company had legally declared a dividend. The stockholders authorized their trustees to receive the dividend. The $500,000 note given to the trustees in payment of the dividend was binding on the company and created the relationship of debtor and creditor."

The fact that in the case at bar the resolution directed the treasurer to pay the dividends "as cash was available" and the further fact that the stockholders acquiesced in this manner of payment of the debt to them, does not at all change the legal situation which resulted from the declaration of the dividend and the crediting to each stockholder of his portion thereof. This resulted, we think, as completely as the arrangements made in the cases cited did, in creating the legal relationship of debtor and creditor, so that payments made in satisfaction of this debt must be treated as such and not as taxable distributions.

The judgment of the Tax Court on the first issue is Affirmed; on the second it is Reversed.

9. George Feick & Sons Co. v. Blair, 58 App.D.C. 168, 26 F.2d 540; United States v. Guinzburg, 2 Cir., 278 F. 363; Southport Mill v. Commissioner of Internal Revenue, 5 Cir., 26 F.2d 17; United States v. Southwestern Portland Cement Co., 9 Cir., 97 F.2d 413; Commissioner of Internal Revenue v. Goldwyn, 9 Cir., 175 F.2d 641; Weaver v. Commissioner of Internal Revenue, 9 Cir., 58 F.2d 755.