**McCABE PACKING CO., John F. McCabe, Camile McCabe, Stuart J. Traynor, Barbara M. Traynor, and Agnes L. McCabe, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 91–3132.

United States District Court, C.D. Illinois, Springfield Division.

Dec. 23, 1992.

James O. Beavers, David R. Fines, Taylorville, IL, for plaintiffs.

James A. Lewis, Asst. U.S. Atty., Springfield, IL, Charles J. Cannon, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## OPINION

RICHARD MILLS, District Judge:

The question: "Is fetal calf blood a constructive dividend?".

The vehicle: Cross motions for summary judgment.

## I. BACKGROUND

This action arises out of a dispute between the Plaintiffs and the Defendant regarding the proper classification of income derived from the sale of fetal calf blood for income tax purposes. The McCabe Packing Company is a slaughterhouse located in Taylorville, Illinois that was started in 1942 as a sole proprietorship. In 1972, following many years of growth, the business was incorporated, and Joseph McCabe was named as president, Agnes McCabe was vice president, and John McCabe served as secretary/treasurer. The board of directors consisted of Joseph McCabe, Agnes McCabe, and John McCabe.

In 1974, the Company was approached by Riggs Biochemical Corporation (now known as the Metrix Company) to determine whether the McCabe Company would be interested in selling fetal calf blood to Riggs. Fetal calf blood is usually a worthless byproduct of the slaughtering process that is sold to a rendering company for a very nominal amount along with all of the other refuse left after the meat, organs, and hide have been extracted from the cow. However, a process was developed whereby the blood could be extracted from a calf fetus and used for various pharmaceutical research purposes. The McCabe Company had in the past attempted, with no success, to extract fetal calf blood and develop it as a byproduct. The process at that time was a difficult one that required considerable skill and training. Being a relatively small slaughterhouse, the McCabe Company decided that it did not wish to pursue this line of business. However, the McCabe Company informed John McCabe that he could extract fetal calf blood for resale if he so desired.

Consequently, John McCabe began to learn the process of extracting fetal calf blood, and he developed it into a business of his own, selling the blood he extracted to Riggs Biochemical. All of the equipment used by John McCabe in extracting the fetal calf blood was supplied by Riggs. John McCabe—since 1974—performed the extraction of the blood outside of his duties as a manager of the McCabe Company, and all of the sales revenue from the blood was deposited into his personal bank account, with all of the income being reported to the Internal Revenue Service. John McCabe continued to extract and sell the blood to Riggs with the full knowledge of the McCabe Company until July 1, 1987. Following the death of Joseph McCabe in 1986, John McCabe became executive vice president of the McCabe Company, and at a meeting of the board of directors of the McCabe Company on June 6, 1987, the board decided that, as of July 1, 1987, the McCabe Company would begin selling the

fetal calf blood as a byproduct of the slaughtering process.

Following audits conducted after 1987, the Internal Revenue Service filed notices of deficiencies for John and Camille McCabe and the McCabe Packing Company for tax years 1986 and 1987 in the amounts of $10,088 and $8,797, and $40,045 and $75,273, respectively, for improper classification of income. The Internal Revenue Service argued that the income from the fetal calf blood sales for the years 1986 and 1987 should have been reported as corporate income, rather than as personal business income. The McCabes and McCabe Packing Company paid the deficiencies and filed claims for refunds.

When the Internal Revenue Service failed to respond to the claims for refunds, the Plaintiffs filed suit for the refunds in this Court, pursuant to 28 U.S.C. § 1346(a)(1). Both parties have moved for summary judgment regarding the proper reporting of the income from the fetal calf blood sales for the years 1986 and 1987.

## II. SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir.1985). The moving party has the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir. 1983).

## III. ANALYSIS

Based on a review of the record, there are really no disputed facts in this case, and the entire controversy appears to revolve around a disagreement between the parties regarding the proper classification of the income derived from the fetal calf blood sales. Therefore, the dispute is a legal one, which this Court is capable of resolving by means of summary judgment.

The tax deficiency determinations of the Commissioner of the Internal Revenue Service are subject to a rebuttable presumption of correctness. *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623 (1935). Therefore, the taxpayer has the burden of demonstrating that the determination of the Internal Revenue Service was in error. Based on the arguments presented and a review of the record, it appears that the determination of the Internal Revenue Service was in error.

The Internal Revenue Service asserts that the income from the fetal calf blood sales should have been reported as corporate income for the years 1986 and 1987, rather than as personal business income. In sum, the United States argues that the payments received by John McCabe from Riggs Biochemical for the fetal calf blood sales in 1986 and 1987 represented the payment of corporate income and therefore constructive dividends to John McCabe. From a review of the applicable law, however, this does not seem to be the case. In fact, to find a constructive dividend requires an extreme stretching of the imagination. It is interesting to note that prior to 1987, the income tax returns of both the McCabes and the McCabe Packing Company had been audited by the Internal Revenue Service on almost an annual basis without any adjustments being proposed in regard to the income derived from the fetal calf blood sales. Since 1974, the corporation's returns have been audited seven

times, and the individual returns of the McCabes have been audited more than nine times.

■ The Seventh Circuit has held that a constructive dividend exists where there has been a corporate distribution that is not formally labeled as a dividend payment and is not "an expenditure for the corporation's benefit." *United States v. Mews*, 923 F.2d 67, 68 (7th Cir.1991). First, then, it must be determined whether the fetal calf blood sales were a corporate distribution or expenditure. In this case, there is no way that these sales could be labeled as a corporate distribution or expenditure, because there was no asset of the corporation that was being distributed. The fetal calf blood was a worthless byproduct to the McCabe Company, and, therefore, there was no distribution of any asset of the McCabe Company to John McCabe and hence no constructive dividend. This holding appears readily from a review of the corporate opportunity doctrine.

■ Under Illinois law, the business decision of a corporation not to engage in a particular line of business is beyond any questioning by the courts, as long as the corporation was given the opportunity upon full disclosure of the facts to decide whether to enter the particular line of business. *Kerrigan v. Unity Savings Assoc.*, 58 Ill.2d 20, 27–28, 317 N.E.2d 39 (1974). Under the corporate opportunity doctrine, a director or agent of a corporation is free to take a business opportunity for himself if there has been full disclosure of the opportunity to the corporation and if the corporation has rejected the opportunity or is not in a position to accept the opportunity or has tried without success to obtain it. *Northwestern Terra Cotta Corp. v. Wilson*, 74 Ill.App.2d 38, 47, 219 N.E.2d 860 (1966); *Forkin v. Cole*, 192 Ill.App.3d 409, 429–30, 139 Ill.Dec. 410, 548 N.E.2d 795 (1989).

■ In this case, the McCabe Company was fully aware of the opportunity to extract the fetal calf blood and sell it as a byproduct. The McCabe Company had been approached by Riggs Biochemical for purchase of the blood and had decided not to pursue this line of business. This was a business decision of the corporation made based on a full disclosure of the relevant facts, and as such, the decision is not subject to question by this Court.

Nonetheless, it was not at all unreasonable for the corporation to decide not to extract fetal calf blood as a byproduct prior to 1987. The McCabe Company was a relatively small slaughterhouse, and it did not want to expend the time and effort required to develop a new and somewhat complicated process for the sale of a byproduct that might produce only marginal returns to the corporation. Since 1974, the McCabe Company has had annual sales ranging from $12,000,000 to $32,000,000, and the fetal calf blood sales would have amounted at most to less than three-tenths of one per cent of total annual sales. The company had already tried to extract the blood without any success and did not want to bother with what it considered to be an insignificant activity in comparison to its overall operations. The McCabe Company's main business was the sale of beef, and the company chose to concentrate its efforts on developing its beef sales. Thus, the McCabe Company, after full disclosure of the business opportunity, decided not to engage in the sale of fetal calf blood, which was an otherwise worthless byproduct to the company.

Consequently, John McCabe was free to pursue the extraction and sale of the fetal calf blood on his own without any accountability to the corporation. He performed the work on his own time at no cost to the corporation, and all of the revenue he realized from the sale of the fetal calf blood was fully reported to the Internal Revenue Service. There is no question here of any non-reporting of income. Because the sale of the fetal calf blood was not in any way a business activity of the corporation, the income derived therefrom was properly reported as personal business income by John McCabe for the tax years 1986 and 1987, and there was no constructive dividend made by the McCabe Packing Company to John McCabe for those years.

*Ergo*, Plaintiffs' motion for summary judgment is ALLOWED, and Defendant's cross motion for summary judgment is DENIED.

The United States is hereby ordered to pay to the Plaintiffs $134,203, representing the deficiencies wrongly assessed against the McCabe Company and John and Camille McCabe by the Internal Revenue Service for the tax years 1986 and 1987.

SO ORDERED.

CASE CLOSED.