TERRY J. WELLE AND CHRISSE J. WELLE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 156–11.　　　　　Filed June 27, 2013.

P–H is the sole shareholder of TWC, a subch. C corporation. Ps used TWC to facilitate the construction of their lakefront home in that TWC kept track of construction costs and TWC's framing crew framed the home. Ps, however, personally hired the subcontractors and ordered building supplies from the vendors in TWC's name. Ps reimbursed TWC for its costs, including overhead, but did not pay TWC an amount equal to the profit margin of 6% to 7% that TWC normally charged its customers (forgone profit). R determined that P–H received a constructive dividend from TWC in an amount equal to TWC's forgone profit. *Held*: P–H did not receive a constructive dividend equal to TWC's forgone profit from services that TWC provided during the building of Ps' home because the transactions did not result in the distribution of current or accumulated earnings and profits.

*Jon J. Jensen*, for petitioners.
*Christina L. Cook*, for respondent.

MARVEL, *Judge*: Respondent determined a deficiency of $10,620 in petitioners' Federal income tax and an accuracy-related penalty under section 6662(a)[1] of $2,124 for 2006. The issues for decision are: (1) whether petitioner Terry J. Welle received a constructive dividend of $48,275 from his wholly owned subchapter C corporation, Terry Welle Construction, Inc. (TWC), in 2006; and (2) whether petitioners are liable for the accuracy-related penalty under section 6662(a).

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts is incorporated herein by this reference. Petitioners resided in North Dakota when they petitioned this Court.

TWC is a construction company specializing in multifamily housing projects. For most jobs that closed during 2006 TWC had profit margins of 6% to 7%. Mr. Welle is the president and sole shareholder of TWC.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code (Code) in effect for the year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners owned lakefront property in Detroit Lakes, Minnesota, on which they planned to build a second home (lakefront home). In 2004 petitioners began construction of the lakefront home. To keep track of material and other construction costs, Mr. Welle caused TWC to open a "cost plus" job account on its books. Petitioners, however, personally contacted all of the subcontractors and building supply vendors that built or supplied materials for the lakefront home and acted as their own general contractors during its construction.

During the construction TWC paid the subcontractors and vendors directly, and its framing crew framed the lakefront home. Petitioners repaid TWC for all amounts paid to the subcontractors and also reimbursed TWC for its labor and overhead costs. TWC, however, did not charge petitioners, and petitioners did not pay to TWC, an amount equal to the customary profit margin that TWC used to calculate the contract price that it charged its unrelated clients (forgone profit).

Respondent determined that Mr. Welle received a qualified dividend of $48,275 from TWC in 2006, equal to the forgone profit.

OPINION

Respondent contends that Mr. Welle received a constructive dividend from TWC when TWC built petitioners' lakefront home without charging them an amount equal to its customary profit margin of 6% to 7%.

Petitioners contend that (1) Mr. Welle did not receive a constructive dividend because a shareholder does not receive a constructive dividend when a corporation provides services to the shareholder at cost; and (2) respondent's determination of the measure of any constructive dividend that Mr. Welle may have received was erroneous because the services that TWC provided to Mr. Welle were not comparable to the services that it provided to its unrelated clients. Because we decide on this record that Mr. Welle did not receive a

constructive dividend, [2] we need not address petitioners' second contention. [3]

## I. *Constructive Dividends Generally*

Section 61(a)(7) includes dividends in a taxpayer's gross income. Section 316(a) defines a dividend as any distribution of property that a corporation makes to its shareholders out of its earnings and profits accumulated after February 28, 1913, or out of its earnings and profits for the taxable year. Section 317(a) defines property as money, securities, and any other property except stock in the distributing corporation. We have held that, under some circumstances, the provision of services by a corporation to its shareholders constitutes "property" within the meaning of section 317(a). *See Magnon v. Commissioner*, 73 T.C. 980, 993 (1980) (citing *Loftin & Woodard, Inc. v. United States*, 577 F.2d 1206, 1214 (5th Cir. 1978), and *Benes v. Commissioner*, 42 T.C. 358, 379 (1964), *aff'd*, 355 F.2d 929 (6th Cir. 1966)).

"A constructive dividend arises '[w]here a corporation confers an economic benefit on a shareholder without the expectation of repayment, * * * even though neither the corporation nor the shareholder intended a dividend.'" *Hood v. Commissioner*, 115 T.C. 172, 179 (2000) (quoting *Magnon v. Commissioner*, 73 T.C. at 993–994). "'The crucial concept in a finding that there is a constructive dividend is that the corporation has conferred a benefit on the shareholder in order

---

[2] We decide this case without regard to the allocation of the burden of proof. We therefore need not decide whether petitioners satisfied the requirements of sec. 7491(a). *See Blodgett v. Commissioner*, 394 F.3d 1030, 1039 (8th Cir. 2005), *aff'g* T.C. Memo. 2003–212; *Knudsen v. Commissioner*, 131 T.C. 185, 188–189 (2008).

[3] We question the timing of respondent's constructive dividend adjustment. TWC advanced payment of the expenses relating to the construction of petitioners' lakefront home during 2004 and 2005. Additionally, Mr. Welle credibly testified that he and petitioner Chrisse J. Welle moved into the lakefront home during Memorial Day weekend of 2005. Accordingly, it appears that a credible argument could have been made that any constructive dividend arose in 2004 and/or 2005. *See* sec. 1.451–1(a), Income Tax Regs. However, we deem this issue waived by petitioners because they never raised it. *See Muhich v. Commissioner*, 238 F.3d 860, 864 n.10 (7th Cir. 2001) (issues not addressed or developed are deemed waived—it is not the Court's obligation to research and construct the parties' arguments), *aff'g* T.C. Memo. 1999–192.

to distribute available earnings and profits without expectation of repayment.'" *Truesdell v. Commissioner*, 89 T.C. 1280, 1295 (1987) (quoting *Noble v. Commissioner*, 368 F.2d 439, 443 (9th Cir. 1966), *aff'g* T.C. Memo. 1965–84; *see also Palmer v. Commissioner*, 302 U.S. 63, 70 (1937) (stating that, for a transaction to be treated as a deemed dividend, "it is at least necessary to make some showing that the transaction is in purpose or effect used as an implement for the distribution of corporate earnings to stockholders"); *CTM Constr., Inc. v. Commissioner*, T.C. Memo. 1988–590, 56 T.C.M. (CCH) 971, 974 (1988) ("Generally, a constructive distribution occurs when corporate assets are diverted to or for the benefit of a shareholder without adequate consideration for the diversion." (citing *Sammons v. Commissioner*, 472 F.2d 449 (5th Cir. 1972), *aff'g in part, rev'g in part* T.C. Memo. 1971–145)). However, "'[n]ot every corporate expenditure [that] incidentally confer[s] economic benefit on a shareholder is a constructive dividend.'" *Loftin & Woodard*, 577 F.2d at 1215 (quoting *Crosby v. United States*, 496 F.2d 1384, 1388 (5th Cir. 1974)).

Where a corporation constructively distributes property to a shareholder, the constructive dividend received by the shareholder is ordinarily measured by the fair market value of the benefit conferred. *See Ireland v. United States*, 621 F.2d 731, 737 (1980) (citing *Loftin & Woodard*, 577 F.2d at 1223); *Melvin v. Commissioner*, 88 T.C. 63, 80–81 (1987), *aff'd*, 894 F.2d 1072 (9th Cir. 1990). However, where fair market value cannot be reliably ascertained or there is evidence that fair market value is an inappropriate mode of measurement, the constructive dividend can be measured by the cost to the corporation of the benefit conferred. *See Loftin & Woodard*, 577 F.2d at 1223 (citing *Commissioner v. Riss*, 374 F.2d 161, 170 (8th Cir. 1967), *aff'g in part, rev'g in part* T.C. Memo. 1964–190).

The Code does not define the term "earnings and profits". *See* sec. 316(a); *Henry C. Beck Co. v. Commissioner*, 52 T.C. 1, 6 (1969), *aff'd per curiam*, 433 F.2d 309 (5th Cir. 1970). As we have previously observed, the calculation of earnings and profits is not easy or obvious. *See, e.g.*, *Anderson v. Commissioner*, 67 T.C. 522, 527 (1976), *aff'd*, 583 F.2d 953 (7th Cir. 1978); *Juha v. Commissioner*, T.C. Memo. 2012–68, 103 T.C.M. (CCH) 1338, 1341 (2012). For example, although

section 1.312–6(a), Income Tax Regs., provides that a corporation must compute earnings and profits using the same method of accounting employed in computing taxable income, earnings and profits are not equivalent to taxable income. *See Commissioner v. Wheeler*, 324 U.S. 542, 546 (1945); *Jaques v. Commissioner*, 935 F.2d 104, 107–108 (6th Cir. 1991), *aff'g* T.C. Memo. 1989–673. The reason for this distinction is that earnings and profits is a broad concept "which the tax law has utilized 'to approximate a corporation's power to make distributions which are more than just a return of investment.'" *Henry C. Beck Co. v. Commissioner*, 52 T.C. at 6 (quoting Arthur R. Albrecht, "'Dividends' and 'Earnings or Profits'", 7 Tax L. Rev. 157, 183 (1952)).

## II. *Services Provided by a Corporation to a Shareholder at Cost*

Respondent contends that *Magnon v. Commissioner*, 73 T.C. 980, stands for the proposition that a shareholder receives a constructive dividend equal to the cost of the services provided to the shareholder by a corporation plus the corporation's customary profit margin. In *Magnon v. Commissioner*, 73 T.C. at 994–996, we held that the amount of the costs and overhead for electrical services provided by a corporation to a shareholder without expectation of repayment was a constructive dividend. But we did not hold, and the Commissioner did not assert, that the constructive dividend the shareholder received included an amount corresponding to the corporation's forgone profit.

Similarly, in cases such as *Benes v. Commissioner*, 42 T.C. at 379, *Nahikian v. Commissioner*, T.C. Memo. 1995–161, 69 T.C.M. (CCH) 2370, 2372–2375 (1995), *CTM Constr., Inc. v. Commissioner*, 56 T.C.M. (CCH) at 974, and *Clevenger v. Commissioner*, T.C. Memo. 1986–149, 51 T.C.M. (CCH) 835, 839–840 (1986), *aff'd*, 826 F.2d 1379 (4th Cir. 1987), we held that amounts expended by the respective corporations in constructing homes for their shareholders constituted constructive dividends. But we did not hold, and the Commissioner did not assert, that the constructive dividends in those cases each included an amount corresponding to the respective corporations' forgone profit.

Respondent does not explain how a corporation's decision not to make a profit on services provided to a shareholder who fully reimburses the corporation for the cost of the services (including overhead) constitutes a distribution of property that reduces the corporation's earnings and profits under section 316(a), nor does respondent cite any cases supporting such a position. Respondent argues that his position follows from the general rule that constructive dividends are ordinarily measured by the fair market value of the benefit conferred. *See Ireland*, 621 F.2d at 737; *Melvin v. Commissioner*, 88 T.C. at 80–81. It appears to us, however, that respondent's argument skips an important analytical step required by section 316(a)—we must first find that there has been a distribution of property to the shareholder that reduces the corporation's current or accumulated earnings and profits. A finding that a shareholder received a constructive dividend from a corporation is only appropriate where "corporate assets are diverted to or for the benefit of a shareholder", *CTM Constr., Inc. v. Commissioner*, 56 T.C.M. (CCH) at 974, "in order to distribute available earnings and profits without expectation of repayment", *Truesdell v. Commissioner*, 89 T.C. at 1295; *see also Palmer v. Commissioner*, 302 U.S. at 69 ("While a sale of corporate assets to stockholders is, in a literal sense, a distribution of its property, such a transaction does not necessarily fall within the statutory definition of a dividend. For a sale to stockholders may not result in any diminution of its net worth and in that case cannot result in any distribution of its profits."); *Honigman v. Commissioner*, 466 F.2d 69, 74 (6th Cir. 1972) (noting that the below-market sale of corporate assets at issue diminished the net worth of the corporation), *aff'g in part, rev'g in part, and remanding* 55 T.C. 1067 (1971); *Goldstein v. Commissioner*, 298 F.2d 562, 568 (9th Cir. 1962) (noting that corporate assets were reduced in the amount held to be a disguised dividend), *aff'g* T.C. Memo. 1960–276; *McCabe Packing Co. v. United States*, 809 F. Supp. 614, 617 (C.D. Ill. 1992) (holding that a shareholder's use of a discarded slaughterhouse byproduct was not a constructive dividend to the shareholder because corporate assets were not distributed or expended).

We cannot see how TWC's provision of services to Mr. Welle at cost resulted in the diversion of corporate assets or

the distribution of its earnings and profits. Moreover, we do not think that TWC's provision of services to Mr. Welle at cost was "in purpose or effect * * * an implement for the distribution of corporate earnings" and profits. *See Palmer v. Commissioner*, 302 U.S. at 70.

By contrast, in cases involving the bargain sale of property to a shareholder, we have held that the shareholder receives a constructive dividend equal to the excess of the fair market value over the sale price, *see, e.g.*, *Dellinger v. Commissioner*, 32 T.C. 1178, 1182–1183 (1959); *Nelson v. Commissioner*, T.C. Memo. 1982–361, 44 T.C.M. (CCH) 277, 281 (1982), *aff'd*, 767 F.2d 667 (10th Cir. 1985); *see also* sec. 1.301–1(j), Income Tax Regs., because the property being sold is an asset of the corporation and its sale for less than fair market value diverts actual value otherwise available to the corporation to or for the benefit of a shareholder, *see Honigman v. Commissioner*, 466 F.2d at 74; *Goldstein v. Commissioner*, 298 F.2d at 568. Similarly, we have held that, where a corporation provides a shareholder with the use of corporate property and the shareholder does not fully and reasonably reimburse the corporation for its use, the shareholder has received a constructive dividend equal to the fair market value of the use of the property. *See Melvin v. Commissioner*, 88 T.C. at 80–81. In *Melvin*, however, we observed that incidental or insignificant use of corporate property may not justify a finding of a constructive dividend, *id.* at 82 (citing *United Aniline Co. v. Commissioner*, 316 F.2d 701, 703 (1st Cir. 1963), *aff'g* T.C. Memo. 1962–60); *see also Loftin & Woodard*, 577 F.2d at 1214, and we specifically found that the taxpayer's personal use of the property was not incidental to the taxpayer's business use of the property, *Melvin v. Commissioner*, 88 T.C. at 82–83.

TWC maintained its corporate infrastucture and workforce for business purposes. Mr. Welle's use of TWC during the construction of petitioners' lakefront home was at most incidental to those purposes. The most that can be said about Mr. Welle's use of TWC is that he used the corporation as a conduit in paying subcontractors and vendors and that he obtained some limited services from corporate employees. Mr. Welle fully reimbursed the corporation for all costs, including overhead, associated with those services, and TWC did not divert actual value otherwise available to it by failing to

apply its customary profit margin in determining the amount Mr. Welle had to reimburse the corporation. We therefore conclude that this arrangement did not operate as a vehicle for the distribution of TWC's current or accumulated earnings and profits within the meaning of section 316(a).

III. *Conclusion*

We hold that Mr. Welle did not receive constructive dividend income when TWC provided services to him at cost and for which he timely paid. Accordingly, we do not sustain respondent's deficiency determination, and we thus need not decide whether an accuracy-related penalty under section 6662(a) would be appropriate.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

*Decision will be entered for petitioners.*