T.C. Memo. 2012-68

UNITED STATES TAX COURT

JASON MICHAEL JUHA AND STEPHANIE SEIKO SATO JUHA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4109-10.                         Filed March 13, 2012.

Jason Michael Juha and Stephanie Seiko Sato Juha, pro sese.

Nick G. Nilan, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  Respondent determined a deficiency in petitioners' 2007

Federal income tax of $6,275 and an accuracy-related penalty of $1,255 under

section 6662(a)[1]. The issues for decision are: (1) whether the amounts petitioners received from five Canadian entities constitute dividend distributions or returns of capital;[2] and (2) whether petitioners are liable for an accuracy-related penalty.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact are incorporated herein by this reference. Petitioners resided in the State of Washington when the petition was filed.

Jason Michael Juha (Mr. Juha) holds a bachelor of science degree in mechanical engineering. During 2007 Mr. Juha worked for KPMG, LLP, as a senior associate in information technology infrastructure, and his wife, Stephanie Seiko Sato Juha, worked as a prosecutor for King County, Washington.

Petitioners owned publicly traded shares in five Canadian entities through a brokerage account with Charles Schwab & Co., Inc. (Charles Schwab). Petitioners

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts have been rounded to the nearest dollar.

[2]In the notice of deficiency, respondent characterized $38,890 of the distributions as ordinary dividends. Respondent has since recalculated the deficiency by characterizing $37,120 of the distributions as qualified dividends and $1,770 of the distributions as ordinary dividends. Respondent's recalculations resulted in a reduced deficiency and sec. 6662(a) penalty.

held shares in Canetic Resources Trust (Canetic), CanWel Building Materials Income Fund (CanWel), Fording Canadian Coal Trust (Fording), True Energy Trust (True Energy), and Harvest Energy Trust (Harvest Energy).  During 2007 petitioners received the following distributions:

| Entity | Distribution amount |
|---|---|
| Canetic | $36,406 |
| CanWel | 1,419 |
| Fording | 486 |
| True Energy | 352 |
| Harvest Energy | 229 |
| Total | 38,892 |

Subsequently, for 2007 Charles Schwab issued to petitioners a Form 1099-DIV, Dividends and Distributions.  According to the Form 1099-DIV, petitioners received ordinary dividends of $38,891, of which $37,120 was qualified dividends.  Charles Schwab also provided an account summary detailing the dividends and distributions reported on petitioners' Form 1099-DIV.  According to the summary, petitioners received qualified dividends of $36,406, $486, and $229, from Canetic, Fording, and Harvest Energy, respectively, and nonqualified dividends of $1,419 and $352 from CanWel and True Energy, respectively.

Mr. Juha prepared petitioners' 2007 Federal income tax return.  Although he had received a copy of the Form 1099-DIV before he prepared the return, Mr. Juha

decided to disregard the Form 1099-DIV. Instead, he relied on third quarter financial statements from the Canadian entities and the advice and analysis of his father, Michael Paul Juha, Jr.,[3] who did not know at the time that Mr. Juha had received a Form 1099-DIV.

Using the third quarter financial statements, Michael Paul Juha, Jr., prepared a spreadsheet with the income and distributions the entities had reported to that point. He calculated the percentage of the distributions that would be returns of capital and the percentage that would be dividend distributions. He then emailed Mr. Juha the spreadsheet along with the third quarter financial statements. Michael Paul Juha, Jr., and Mr. Juha relied on the third quarter financial statements because the audited annual financial statements were not available at the time. Although Mr. Juha had the Form 1099-DIV for 2007, he nevertheless estimated both the fourth quarter financial information and the amounts of distributions the entities would make in 2007. He relied on his father's analysis and his own

---

[3]Michael Paul Juha, Jr., is not a certified public accountant, but Mr. Juha relied on him because he believed that his father had extensive knowledge of U.S. and Canadian tax law.

projections in  preparing petitioners' 2007 return and disregarding the Form 1099-DIV.[4]

Petitioners jointly filed their Form 1040, U.S. Individual Income Tax Return, for 2007.  On their Form 1040, petitioners reported no ordinary dividends and $1,279 in qualified dividends.  Petitioners claimed a refund of $5,897.  Petitioners attached a Form 1116, Foreign Tax Credit (Individual, Estate, or Trust), to their Federal income tax return.  On the Form 1116, petitioners reported that they received $38,891 in gross income from sources within Canada and claimed $29,168 in expenses related to that gross income.  Petitioners reported $5,834 in taxes withheld at the source on rents and royalties.

On May 5, 2008, respondent mailed petitioners a letter informing them of a computational error on their 2007 return that resulted in an increased refund for 2007.  Accordingly, respondent sent petitioners a refund check dated May 3, 2008, for $6,510.

On June 1, 2009, respondent mailed to petitioners a Notice CP2000 for 2007. In the Notice CP2000, respondent proposed an increase in petitioners' taxable

---

[4]At the end of March, Michael Paul Juha, Jr., received the annual audited financial statements.  He updated his initial spreadsheet and sent the spreadsheet, along with the audited annual financial statements, to Mr. Juha.  At the time he sent this information to Mr. Juha, Mr. Juha had already filed petitioners' 2007 return.

dividends of $38,890 and a $10,176 increase in petitioners' tax on the basis of the Form 1099-DIV Charles Schwab had submitted to the Internal Revenue Service. In response, on June 24, 2009, petitioners submitted a Form 1040X, Amended U.S. Individual Income Tax Return. On a spreadsheet attached to the Form 1040X, petitioners claimed that they received "gross royalty distributions" from the five Canadian entities. Petitioners claimed that the distributions from Canetic, Harvest Energy, and True Energy were not taxable dividends and that only portions of the distributions from CanWel and Fording were taxable dividends. Respondent did not process the Form 1040X because petitioners did not include the entire amount of dividend income reported by Charles Schwab on the return. On August 28, 2009, petitioners submitted a second Form 1040X for 2007. Respondent did not process the second Form 1040X because petitioners still did not include the entire amount of dividend income reported by Charles Schwab on the return.

On January 4, 2010, respondent issued to petitioners a notice of deficiency for 2007.

## OPINION

I.    Taxation of Corporate Distributions

    A.    Burden of Proof

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). If, however, a taxpayer produces credible evidence[5] with respect to any factual issue relevant to ascertaining the taxpayer's tax liability and satisfies the requirements of section 7491(a)(2), the burden of proof on any such issue shifts to the Commissioner. Sec. 7491(a)(1). Section 7491(a)(2) requires a taxpayer to demonstrate that he complied with the substantiation requirements, maintained all records required under the Code, and cooperated with reasonable requests by the Secretary[6] for witnesses, information, documents,

---

[5]Credible evidence is evidence the Court would find sufficient upon which to base a decision on the issue in the taxpayer's favor, absent any contrary evidence. See Higbee v. Commissioner, 116 T.C. 438, 442 (2001).

[6]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A)(i).

meetings, and interviews. See also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

Petitioners argue that the burden of proof should shift to respondent under section 7491(a) because they produced credible evidence and satisfied the requirements of section 7491(a)(2).[7]  Respondent concedes that petitioners cooperated with the Secretary with regard to all reasonable requests for information. However, respondent argues that petitioners have not produced credible evidence as required by section 7491(a)(1) or satisfied the remaining requirements of section 7491(a)(2).

Petitioners produced only the audited financial statements for the Canadian entities. Although the audited financial statements may have been a starting point for calculating earnings and profits, petitioners did not offer credible evidence to prove the adjustments required under U.S. tax law to calculate earnings and profits or to prove what the current or accumulated earnings and profits of each entity were. Petitioners did not introduce a corrected Form 1099-DIV[8] or any other

---

[7]On brief, petitioners contend only that they introduced credible evidence and cooperated with all reasonable requests by the Secretary.  Petitioners do not address whether they complied with the substantiation requirements or maintained all required records.

[8]Mr. Juha requested a corrected Form 1099-DIV from Charles Schwab, but

(continued...)

records establishing that the distributions were returns of capital rather than dividend distributions and did not offer any testimony from the entities or from an expert witness regarding the proper calculation of earnings and profits for each entity. We find that petitioners did not introduce credible evidence that, standing alone, would be sufficient to convince this Court that the distributions from the Canadian entities were returns of capital rather than dividend distributions, and therefore, the burden of proof remains on petitioners.

B.    Dividend Distributions in General

Gross income includes all income from whatever source derived. Sec. 61(a). "[A] distribution of property * * * made by a corporation to a shareholder with respect to its stock" shall be treated as prescribed by section 301(c) . Sec. 301(a). Section 301(c)(1) provides that a shareholder must include in gross income the portion of the distribution that is a dividend (as defined by section 316(a)). Secs. 61(a)(7), 316(a); Hillsboro Nat'l Bank v. Commissioner, 460 U.S. 370, 392 (1983); see also Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729-731 (1929). Section 316 (a) defines a dividend as "any distribution of property made by a corporation to its shareholders--(1) out of its earnings and profits accumulated after

_____

[8](...continued)
Charles Schwab declined to issue one.

February 28, 1913, or (2) out of its earnings and profits of the taxable year".[9] If all or part of the distribution is not a dividend, that amount is a nontaxable return of capital to the extent of the shareholder's adjusted basis in the stock, sec. 301(c)(2), and any amount in excess of the shareholder's adjusted basis is taxable capital gain, sec. 301(c)(3)(A).

C.    Parties' Arguments

Petitioners contend that the distributions at issue constitute returns of capital and not dividend distributions because the Canadian entities did not have sufficient current or accumulated earnings and profits from which a dividend distribution could be made for 2007. Petitioners rely solely on the entities' audited financial statements for taxable years ending December 31, 2006 and 2007, all of which were prepared by independent auditors.[10]

Respondent contends that all of the distributions from the Canadian entities constitute taxable dividends that petitioners must include in gross income.

---

[9]Sec. 1.316-1(a)(1), Income Tax Regs., provides that the term "dividend" includes a distribution of property made by a foreign corporation to its shareholders.

[10]Deloitte & Touche LLP prepared Canetic's audited financial statements for the directors of Penn West Energy Trust (Penn West). Canetic and Penn West entered into a combination agreement on October 31, 2007, and closed the combination agreement on January 11, 2008, with each Canetic unitholder exchanging Canetic units for Penn West units.

Respondent contends that the following items in evidence support this treatment: (1) the Form 1099-DIV issued by Charles Schwab; (2) petitioners' 2007 Form 1116, on which they reported $38,891 as taxable foreign source income for purposes of claiming the foreign tax credit; and (3) news releases from the Canadian entities directing U.S. shareholders to treat the distributions as taxable dividends rather than returns of capital. Respondent also contends that the audited financial statements do not purport to compute the entities' earnings and profits under U.S. tax principles and consequently are irrelevant.

D.    Calculating Earnings and Profits

As we have observed in prior cases, the calculation of earnings and profits[11] is not easy or obvious. Anderson v. Commissioner, 67 T.C. 522, 527 (1976), aff'd, 583 F.2d 953 (7th Cir. 1978); HIE Holdings, Inc. v. Commissioner, T.C. Memo. 2009-130; see also Estate of Uris v. Commissioner, 605 F.2d 1258, 1265 (2d Cir. 1979), aff'g 68 T.C. 448 (1977); Commissioner v. Gross, 236 F.2d 612, 620-621 (2d Cir. 1956), aff'g 23 T.C. 756 (1955). There are several reasons for the difficulty in making the calculation. For example, although section 1.312-6(a), Income Tax Regs., provides that a corporation must compute earnings and profits

---

[11]The Code does not define the term "earnings and profits". See sec. 316(a); Henry C. Beck Co. v. Commissioner, 52 T.C. 1, 6 (1969), aff'd per curiam, 433 F.2d 309 (5th Cir. 1970).

using the same method of accounting employed in computing taxable income, earnings and profits are not equivalent to taxable income.[12]  See Commissioner v. Wheeler, 324 U.S. 542, 546 (1945); Jaques v. Commissioner, 935 F.2d 104, 107-108 (6th Cir. 1991), aff'g T.C. Memo. 1989-673.

Additionally, the regulations issued with respect to section 316 and section 312 require a number of adjustments to be made in calculating earnings and profits.  Section 1.316-1(a)(1)(ii), Income Tax Regs., provides that a corporation computes earnings and profits as of the close of the taxable year when the distribution was made, "without diminution by reason of any distributions made during the taxable year."  Additionally, some items that are excluded from taxable income must be included in the computation of earnings and profits.[13]  Certain items deductible from taxable income may not be deducted in computing earnings

---

[12]The rationale for the difference is that earnings and profits is a broad concept, "which the tax law has utilized 'to approximate a corporation's power to make distributions which are more than just a return of investment.'"  Henry C. Beck Co. v. Commissioner, 52 T.C. at 6.

[13]Sec. 1.312-6(b), Income Tax Regs., requires a corporation to include in earnings and profits income exempted by statute, income not taxable by the Federal Government under the Constitution, and all income includable under sec. 61.

and profits,[14] but a corporation may deduct other items from earnings and items

deductible from taxable income may not be deducted in computing earnings

profits that it may not deduct in computing taxable income.[15] Some items are

deductible from both taxable income and earnings and profits, but the amount or

timing of the deduction differs in computing the two figures.[16]

---

[14]For example, a corporation must include in full dividends received from another corporation in computing earnings and profits, although sec. 243 allows a corporation to deduct up to 100% of the dividend received. Woods Inv. Co. v. Commissioner, 85 T.C. 274, 280, n.13 (1985); sec. 1.312-11(a), Income Tax Regs. Similarly, although a corporation may deduct from taxable income a net operating loss incurred in a prior year, the corporation may not deduct the net operating loss from the current year's earnings and profits. Woods Inv. Co. v. Commissioner, 85 T.C. at 280, n.13; sec. 1.312-6(d), Income Tax Regs.

[15]For example, in computing earnings and profits, a corporation may deduct losses that are not deductible in computing taxable income. Divine v. Commissioner, 500 F.2d 1041, 1053 (2d Cir. 1974), rev'g and remanding 59 T.C. 152 (1972); sec. 1.312-7(b)(1), Income Tax Regs.

[16]For example, sec. 312(n)(2) provides that in computing earnings and profits, corporations must capitalize and ratably deduct intangible drilling costs and mineral exploration and development costs, although those costs may be deductible under sec. 263(c). Sec. 312(n)(5) provides that in computing earnings and profits, corporations must include in income all amounts received under installment sale contracts, regardless of whether the income received is includable in taxable income. The regulations also require corporations to treat the same items differently. Sec. 1.312-6(c)(1), Income Tax Regs., provides that a corporation may use percentage depletion to calculate a depletion deduction for income tax purposes, but the corporation may only compute earnings and profits using depletion based on cost.

Furthermore, a corporation's earnings and profits are not necessarily equal to the corporation's net profit as determined using corporate financial accounting principles. See Estate of Uris v. Commissioner, 605 F.2d at 1265; sec. 1.312-6(a), Income Tax Regs.; see also Commissioner v. Wheeler, 324 U.S. at 546. In this regard, the U.S. Court of Appeals for the Second Circuit has stated:

> We note, of course, that "earnings and profits," a statutory concept, bears no exact relation either to taxable income or to earnings as determined by "corporate accounting concepts" in the given context. * * * Thus the amount of earnings or profits appearing on the corporation's books is not determinative and perhaps not even prima facie evidence of earnings or profits for income tax purposes. * * *

Estate of Uris v. Commissioner, 605 F.2d at 1265. The U.S. Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), has held that in determining earnings and profits, a court need not apply the same standard as applied in corporate accounting practice, Commissioner v. Goldwyn, 175 F.2d 641, 643-644 (9th Cir. 1949), aff'g 9 T.C. 510 (1947). Furthermore, a corporation may engage in a transaction resulting in a net loss for accounting purposes although the transaction does not reduce the corporation's earnings and profits. See H.H. Robertson Co. v. Commissioner, 59 T.C. 53, 59 (1972), aff'd without published opinion, 500 F.2d 1399 (3d Cir. 1974).

To satisfy their burden of proof, petitioners needed to introduce credible evidence showing that the Canadian entities did not have sufficient current or

accumulated earnings and profits from which a dividend distribution could be made. Petitioners introduced only the audited financial statements for the Canadian entities, the testimony of Mr. Juha, and the testimony of Michael Paul Juha, Jr.

None of the audited financial statements include a calculation of earnings and profits for U.S. tax purposes. Although the audited financial statements may have served as a starting point for the calculation of earnings and profits, petitioners did not introduce any evidence as to how the audited financial statements translate to earnings and profits for U.S. tax purposes. Petitioners called no expert witnesses who could analyze the financial data on the audited financial statements and calculate earnings and profits for tax purposes as opposed to financial accounting purposes. Petitioners called no witnesses from any of the Canadian entities or from the independent accounting firms that prepared the audited financial statements to explain the financial data and translate that data into earnings and profits for tax purposes.

Mr. Juha testified that he believed that if the audited financial statements showed a net loss, then any distributions made should be characterized as returns of capital. Mr. Juha further testified that in preparing his return, he examined the entities' third quarter financial statements, and on the basis of his review, he

decided how to characterize the distributions for Federal income tax purposes. If the entity had a net loss on its third quarter financial statement, Mr. Juha testified that he concluded that the entity would not have a profit for the year.

Mr. Juha's testimony at trial supports a conclusion that he erroneously equated net income or loss with earnings and profits. An entity that has a net loss for corporate financial accounting purposes does not necessarily have zero earnings and profits. See Commissioner v. Wheeler, 324 U.S. at 546. In addition, although petitioners introduced into evidence the audited annual financial statements, Mr. Juha did not rely on the audited annual financial statements in preparing petitioners' 2007 return but instead relied on third quarter financial statements. Current year earnings and profits are determined on the basis of the financial data for the entire year, not on the basis of a partial taxable year's results. See sec. 1.316-1(a)(1)(ii), Income Tax Regs. Michael Paul Juha, Jr., stated as much when he informed Mr. Juha that although the third quarter financial statements showed net losses, whether the Canadian entities would show net profits would depend upon financial data for the entire taxable year.

Both the Form 1099-DIV and the news releases from the Canadian entities[17] confirm that the distributions were dividends. In addition, Charles Schwab denied petitioners' request for a corrected Form 1099-DIV. Although petitioners contest the accuracy of the Form 1099-DIV, they introduced no credible evidence to demonstrate that the characterization of the distributions as dividends on that Form 1099-DIV was incorrect.

---

[17]Petitioners did not object to respondent's introduction of news releases from Penn West (on behalf of Canetic), Fording, True Energy, and Harvest Energy. All of the news releases state that the distributions paid to U.S. shareholders will be considered taxable dividend distributions under U.S. tax law. For example, the news release issued by Penn West states:

> In consultation with its U.S. tax advisors, Penn West believes that
> * * * distributions paid to its individual U.S. unitholders will more
> likely than not be "qualified dividends" under the Jobs and Growth Tax
> Relief Reconciliation Act of 2003. * * * Provided the 2007 Canetic
> distributions are considered to be qualified dividends as noted above,
> Penn West has determined that 100 percent of these distributions paid
> during the year will be taxable for U.S. tax purposes as "qualified
> dividends" with no return of capital. [Emphasis added.]

The Jobs and Growth Tax Relief Reconciliation Act of 2003, Pub. L. No. 108-27, sec. 302(a), 117 Stat. at 760, provides that "qualified dividend income" will be taxed at preferential capital gains rates. Qualified dividend income includes dividends received from either a domestic corporation or a qualified foreign corporation. Id.

Mr. Juha testified that he did not rely on the news releases in preparing petitioners' 2007 Federal income tax return because the news releases state that they are not intended to constitute legal or tax advice.

Petitioners have failed to carry their burden of proving that the Canadian entities did not have sufficient current or accumulated earnings and profits to support dividend distributions in 2007. Moreover, the preponderance of the evidence, including the Form 1099-DIV and the news releases showing that the distributions were taxable dividend distributions to petitioners, supports a finding that the distributions in question were dividends. We sustain respondent's determination.

## II.    Section 6662(a) Penalty

Section 6662(a) authorizes the Commissioner to impose a penalty on an underpayment of tax that is attributable to negligence or disregard of rules or regulations or any substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2). Only one component of the section 6662(a) accuracy-related penalty may be imposed with respect to any given portion of an underpayment, even if that portion is attributable to more than one of the types of conduct listed in section 6662(b). New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 187 (2009), aff'd, 408 Fed. Appx. 908 (6th Cir. 2010); see also sec. 1.6662-2(c), Income Tax Regs.

The Commissioner has the initial burden of producing evidence to support the applicability of a section 6662(a) penalty. Sec. 7491(c). To meet this burden, the Commissioner must come forward with sufficient evidence to show that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. at 446-447. If the Commissioner satisfies his burden of production, the burden of producing evidence shifts to the taxpayer, who must demonstrate by a preponderance of the evidence that he or she is not liable for the penalty either because the penalty does not apply or because the taxpayer qualifies for relief under section 6664(c). Id.

Respondent contends that petitioners are liable for the accuracy-related penalty for 2007 because the underpayment of tax is attributable to one or more of the following: (1) negligence or disregard of the rules or regulations; or (2) a substantial understatement of income tax. We turn first to respondent's contention that the section 6662(a) penalty should be imposed because the underpayment was attributable to negligence or disregard of the rules or regulations.

For purposes of section 6662(a), negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Code. Sec. 6662(c); see also Neely v. Commissioner, 85 T.C. 934, 947 (1985) (negligence is lack of due care or failure to do what a reasonable prudent person would do under

the circumstances). Negligence is strongly indicated where a taxpayer "fails to include on an income tax return an amount of income shown on an information return, as defined in section 6724(d)(1)". Sec. 1.6662-3(b)(1)(i), Income Tax Regs. Section 6724(d)(1)(A)(ii) expressly includes information returns relating to payments of dividends.

Mr. Juha testified at trial that he received the Form 1099-DIV from Charles Schwab before he filed petitioners' 2007 Federal income tax return. Rather than including the income shown on the Form 1099-DIV on petitioners' tax return, Mr. Juha ignored the Form 1099-DIV, estimated the Canadian entities' earnings and profits using incomplete financial information, and concluded that the distributions were not dividends. We are satisfied that respondent introduced sufficient evidence to satisfy his burden of production under section 7491(c) and to establish petitioners' negligence.

On brief petitioners contend that they had a reasonable basis and acted in good faith with respect to the underpayment. A taxpayer may avoid imposition of the section 6662(a) penalty if the taxpayer demonstrates that he had a reasonable basis for the underpayment and that he acted in good faith with respect to the underpayment. Sec. 6664(c)(1); sec. 1.6662-3(b)(1), Income Tax Regs. Whether a taxpayer had reasonable cause for, and acted in good faith with respect to, part or

all of an underpayment is determined on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id. A taxpayer's reliance on the advice of an independent, competent professional may satisfy this requirement. Id. However, reliance is unreasonable "when the taxpayer knew, or should have know, that the adviser lacked the requisite expertise to opine on the tax treatment of the disputed item." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioners contend that they had a reasonable basis and acted in good faith with respect to the underpayment because Mr. Juha relied on the audited annual financial statements in preparing their 2007 tax return. However, Mr. Juha testified at trial that he did not receive the audited annual financial statements until after he submitted petitioners' tax return. Mr. Juha did receive the Form 1099-DIV, which he chose to ignore. Mr. Juha further testified that he estimated fourth quarter results and the amount of the distributions taxable as dividends in determining petitioners' tax liability. Mr. Juha did not contact the Canadian entities for additional information or consult a competent professional who had the expertise to calculate the current and accumulated earnings and profits of the Canadian entities.

Petitioners did not have reasonable cause to ignore the Form 1099-DIV under these circumstances.

Alternatively, petitioners contend that they had a reasonable basis and acted in good faith with respect to the underpayment because Mr. Juha relied on the advice of Michael Paul Juha, Jr., in preparing petitioners' tax return. Michael Paul Juha, Jr., testified at trial that he has no tax or accounting expertise. Mr. Juha acknowledged that Michael Paul Juha, Jr., has no expertise in tax or accounting but testified that he relied on the information because of his father's experience as an investor. Petitioners' reliance on the advice of Michael Paul Juha, Jr., was unreasonable because he lacked the expertise necessary to calculate the earnings and profits of the Canadian entities and to opine on the tax treatment of the distributions. We conclude, therefore, that petitioners have failed to satisfy their burden of proving that they are not liable for the section 6662 penalty.

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered under

Rule 155.